## NORTHERN TRUST. CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 7224.

Circuit Court of Appeals, Seventh Circuit.
Dec. 5, 1940.

E. H. McDermott, W. M. Emery, and R. S. Oldberg, all of Chicago, Ill., for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. P. Wenchel, Bureau of Internal Revenue, and Ralph F. Staubly, both of Washington, D. C., for respondent.

Before EVANS and KERNER, Circuit Judges, and LINDLEY, District Judge.

EVANS, Circuit Judge.

Petitioner seeks a review of a deficiency estate tax determination of $16,909.15. Decisive of the litigation is the answer to the query,—Did the deceased transfer to her daughters, by two different conveyances, property of the value of $169,392.86, *in contemplation of death*?

The Facts. Anna Norman of St. Joseph, Missouri, died July 20, 1932, at the age of eighty-one years. Her husband predeceased her in 1903, leaving to her a substantial estate. A Mr. C., her husband's former business associate, managed the estate until November, 1928, first in Mrs. Norman's name, then under the name of Norman Realty and Investment Company. In 1923, the business was conducted in Mrs. Norman's name.

In December, 1924, in consideration of love and affection for her daughters and grandchildren, Mrs. Norman created a revocable trust of a part of her property. Her three daughters, Katherine, Jessie, and May, all survive her.

The property transferred to this first trust consisted of third party notes of $100,000 to which were later added notes of the amount of $50,000. The income from this trust was divided monthly into three parts and paid to each of the three daughters. This was to continue until each arrived at the age of sixty, at which time one-third of the principal was paid each of said beneficiaries. If any child died before reaching sixty years, her interest was to revert to Mrs. Norman, if living, and if not, it was to be held in trust for the children of the de-

ceased daughter. On November 10, 1928 a new instrument was executed, and Northern Trust Company, petitioner herein, was named successor trustee. This trust was revoked on April 13, 1929. In its place Mrs. Norman executed a new trust agreement of the same property for the same consideration and purpose, which contained substantially the same provisions as the old trust. The new trust, like the old one, was revocable, and petitioner included the principal of this trust in the gross estate for estate tax purposes. No controversy exists as to it.

The remainder of Mrs. Norman's property was handled by Mr. C. in Mrs. Norman's name, until 1928. C. resigned November 28, 1928, and Northern Trust Company succeeded him. October 23, 1930, Mrs. Norman signed a new trust agreement, which was re-executed on November 26, 1930, wherein petitioner was named trustee. The property transferred was practically all of Mrs. Norman's property except that which was included in the revocable trust before mentioned, and excepting also certain real estate mortgages in the process of foreclosure, and excepting also her home in St. Joseph, Missouri, and a home farm in Brown County. The property thus transferred had a determined value of $153,292.-86 at the date of Mrs. Norman's death. The trust agreement was similar to the revocable trust, excepting that the income was to be paid to Mrs. Norman during her life and each daughter was to receive her share of the property when she reached the age of seventy years. One daughter was made a co-trustee; the agreement *was irrevocable*.

On July 31, 1931, Mrs. Norman conveyed to the second, the irrevocable trust, the real estate, except the residential property and farm herein referred to. At the same time she conveyed the residential property in St. Joseph to two daughters, and the Brown County farm to all three of her daughters jointly. Sentiment influenced the disposition of the residence and this particular farm, their respective values being $6,500 and $9,600.

Mrs. Norman died intestate. No executor or administrator of her estate was appointed by any court. The trust company was in possession of her property and was therefore the executor, within the meaning of Section 300(a) of the Revenue Act of 1926, 26 U.S.C.A. Int.Rev.Code, § 930(a). It filed the estate tax return which did not include the second trust property, the home and the home farm. Dispute is over the Commissioner's inclusion of these items.

It appears that Mrs. Norman spent the years 1930 and 1931 in St. Joseph, Missouri, excepting for an extended pleasure trip to California. She lived comfortably, quietly, and unostentatiously in her home. Her mental outlook was cheerful, buoyant, and optimistic. She had ample income and she owned or controlled the entire corpus of the revocable trust of over $113,000. She was a devout Christian Scientist and attended Wednesday evening and Sunday services regularly. She enjoyed good health for a woman of her age. She never consulted physicians. She went on daily automobile rides, which she enjoyed. She entertained company.

On a very hot day in July, 1932, she went for an automobile ride, was overcome by the heat, confined to her bed, and died a week or ten days later. Subsequent examination showed that she had had a cerebral hemorrhage and was suffering from myocarditis and arteriosclerosis at the time of her death. These were the stipulated facts.

Petitioner assigns as error: (1) The Board's finding that the transfers ,were made in contemplation of death; (2) The Board's refusal to permit an answer to this question—In your judgment, did Mrs. Norman contemplate death in 1930 or at any time? (3) The Board's refusal to permit the introduction in evidence of certain Christian Science writings.

Respondent relies on the following sentence of Sec. 803(a) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Code, § 811(c):

"* * * Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title [subchapter]."

Reliance is also had on Treasury Regulations 80 (1937 Edition).

Respondent also relies upon two findings of the Board:

"We are of the opinion that the evidence of record in this proceeding does not show that the transfers made in 1930 and 1931 were not made in contemplation of death."

"The only conclusion that can be reached with respect to these transfers is that they were made as testamentary dispositions of

her property and in contemplation of death."

We find, it quite unnecessary to discuss all the evidence upon which these two findings depend. It is sufficient to say that they are amply supported by the evidence, which is our only inquiry. Gross v. Commissioner, 7 Cir., 92 F.2d 621.

The creation of deceased's second trust to which she conveyed practically all of her property, when she could have conveyed it to the same trustee under the first trust, if she had not wished to avoid the revocable feature, is illuminative of her intent. Here she was making final disposition of such of her property as she had not placed in trust. This property was transferred irrevocably, whereas the other property was disposed of in a revocable trust. The significant difference between the two transactions was that the latter would have been tax free were it not made in contemplation of death, while the former was subject to a tax.

Finally, the transfer of the home and of the home farm confirmed the impression which the other transactions make on our mind. It is unnecessary even to consider the effect of the two-year statute which casts the burden of negation of the gifts' being in contemplation of death upon petitioner. Regardless of the location of the burden of proof, we are satisfied that the evidence supports the findings above quoted.

An old family friend was asked the question "Whether in his judgment Mrs. Norman contemplated death in 1930 or at any time?" The Board refused to receive the witness' answer. We are convinced the question was not only improper (calling for a conclusion which invaded the province of the fact finder), but the witness was not qualified to speak thereon. He said she had never talked with him about death. How could one do more than conjecture about the motive of an eighty year old person who was making a gift of all her property to her three daughters in equal shares? Moreover, there was no prejudice from its exclusion, for had it been received, it could not have affected the judgment of the Board.

Respecting the refusal of the court to receive Christian Science tracts, little need be said. The Christian Science religion is so widely known that courts will take judicial notice of its general teachings. Jones on Evidence, 4th Ed., 1938, vol. 1, section 130. If the individual views of members of this sect were sought to be introduced they were inadmissible.

The order of the Board of Tax Appeals is affirmed.