In re MacKAY.

No. 887–P–10275.

District Court, N. D. Indiana, Hammond Division.

March 31, 1947.

Harry Kobel, of Detroit, Mich., for the Immigration & Naturalization Service.

D. J. Bentall, of Chicago, Ill., for petitioner.

SWYGERT, District Judge.

The petition of James Elwood MacKay for naturalization is denied. It is the holding of the Court that the petitioner is not entitled to be admitted to citizenship:

First, because he comes within the purview of Section 305 of the Nationality Act of 1940, 8 U.S.C.A. § 705, which in pertinent part provides that, "No person shall hereafter be naturalized as a citizen of the United States—who * * * is a member of any * * * organization * * * that believes in, advises, advocates, or teaches—(1) the overthrow by force or violence of the Government of the United States."

Secondly, and irrespective of the application of this section of the Naturalization law, Mr. MacKay's petition is denied because his membership in the Communist Party is incompatible with the requirement that a petitioner for naturalization must be a person attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same.

Thirdly, the petition is denied because, aside from these grounds, the petitioner has demonstrated by his answers in the testimony before the Court that he is not a person attached to the principles of the Constitution of the United States.

With regard to the application of Section 305 of the Nationality Act of 1940, the petitioner admits that he is a member of the Communist Party. This question becomes pertinent: Is the Communist Party of the United States an organization which believes in, advises, advocates or teaches the overthrow by force or violence of the Government of the United States?

The present Constitution of the Communist Party of the United States (Government's Exhibit 1) was adopted in 1945, which was several years after the pertinent amendment to Section 305 of the Nationality Act. Irrespective of the absence of any direct language in this document which advises or advocates the overthrow by force or violence of the Government of the United States, the first sentence of the Preamble of the Party Constitution reads, "The Communist Party of the United States is a political party of the American working class, basing itself upon the principles of scientific socialism, Marxism-Leninism." It is common historical knowledge that the Communist theories are based on Marx' and Engels' Communist Manifesto, and as Chief Justice Stone pointed out in his dissenting opinion in Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 1367, 87 L.Ed. 1796, "The fountain head of Communist principles, the Communist Manifesto, published by Marx and Engels in 1848, had openly proclaimed that Communist ends could be attained 'only by the forcible overthrow of all existing social conditions'."

I also quote other excerpts from the Communist Manifesto. On page 17 this appears: "The proletariat goes through various stages of development. With its birth begins its struggle with the bourgeoisie. At first the contest is carried on by individual labourers, then by the work people of a factory, then by the operatives of one trade, in one locality, against the individual bourgeois who directly exploits them. They direct their attacks not against the bourgeois conditions of production, but against the instruments of production themselves; they destroy imported wares that compete with their labour, they smash machinery to pieces, they set factories ablaze, they seek to restore by force the vanished status of the workman of the Middle Ages."

On page 19: "Of all the classes that stand face to face with the bourgeoisie today, the proletariat alone is a really revolutionary class."

On page 20: "The proletarians cannot become masters of the productive forces of society, except by abolishing their own previous mode of appropriation, and thereby also every other previous mode of appropriation. They have nothing of their own to secure and to fortify; their mission is to destroy all previous securities for, and insurances of, individual property."

And, again, on page 20: "In depicting the most general phases of the development of the proletariat, we traced the more or less veiled civil war, raging within existing society, up to the point where that war breaks out into open revolution, and where the violent overthrow of the bourgeoisie

lays the foundation for the sway of the proletariat."

And, finally, on page 31: "If the proletariat during its contest with the bourgeoisie is compelled, by the force of circumstances, to organize itself as a class; if, by means of a revolution, it makes itself the ruling class, and, as such sweeps away by force the old conditions of production, then it will along with these conditions, have swept away the conditions for the existence of class antagonisms, and of classes generally, and will thereby have abolished its own supremacy as a class."

While the present Constitution of the Communist Party of the United States contains no direct language advocating the forcible overthrow of the Government of the United States, its basic principles are laid in the Communist Manifesto from which these quotations have been taken. Moreover, the Communist propaganda, such as has been introduced in evidence, is replete in its references to its adherence to the ideas of Marx and Engels. For example, Government's Exhibit 7, entitled "The Communist Party and You," contains this sentence: "It (the Communist Party) bases all its actions and policies on the science of Socialism, developed and elaborated by the greatest social scientists and working class leaders in history—Karl Marx, Frederick Engels, V. I. Lenin and Joseph Stalin."

Nowhere in the Constitution of the Party, or in any of the present day literature that is in evidence, are the principles of forcible revolt, as advocated by the Communist Manifesto, disavowed or repudiated. Furthermore, it is my opinion that the Court may take judicial knowledge of the historical fact that Communism, based on the writings and teachings of Marx and Engels, advocates force and a so-called dictatorship of the proletariat as a necessary means of obtaining the objectives of Communism; and, also, that conformity to prevailing democratic processes by Communists in a particular country is for tactical purposes only inasmuch as a world wide revolution is the ultimate objective, which objective is the common bond of the Communist parties in the various countries of the world.

In further consideration of this point, the reports of the hearings before the Committee on Immigration and Naturalization of the House of Representatives amply prove that the Section 305 (b) of the Nationality Act of 1940 is aimed directly at those who support and advocate Communism, or who are members of the Communist Party.

It is common knowledge as well as an inevitable conclusion from the evidence submitted at this hearing that the so-called "party line" of the Communist Party in America is shaped or influenced by external interests; that is, its stand or policy on any particular issue is not formulated by the Party members solely themselves; rather formulated in part or in whole by interests and influences emanating from outside this country. It follows that a Communist Party member applying for citizenship cannot be wholeheartedly attached to the principles of the Constitution of the United States and wholeheartedly disposed to the good order and happiness of the United States, because whenever those principles (and national policies based on those principles) conflict with the tenets and policies of the Communist Party, his loyalty is necessarily divided. The price of American citizenship is undivided, complete, unreserved loyalty to this country and the principles of free government on which it was founded. Therefore, if one attaches himself to an organization whose interests are incompatible with the principles of the Constitution and in conflict with the good order and happiness of the United States, his membership in that organization bars him from becoming a citizen.

I therefore hold that the petitioner's membership in the Communist Party, irrespective of the application of Section 305 of the Nationality Act of 1940, is a bar to his becoming a citizen of the United States.

The Supreme Court has said, "No alien has the slightest right to naturalization unless all statutory requirements are complied with." United States v. Ginsberg, 243 U.S. 472, 37 S.Ct. 422, 61 L.Ed. 853. Chief Justice Stone in his dissent in the Schneiderman case observed that attachment to the principles of the Constitution is the most fundamental requirement of

citizenship. Again, the Supreme Court in the MacIntosh case [United States v. MacIntosh, 283 U.S. 605, 51 S.Ct. 570, 572, 75 L.Ed. 1302] said this: "In specifically requiring that the court shall be satisfied that the applicant, during his residence in the United States, has behaved as a man of good moral character, attached to the principles of the Constitution of the United States, etc., it is obvious that Congress regarded the fact of good character and the fact of attachment to the principles of the Constitution as matters of the first importance."

Besides the fact of this active membership in the Communist Party, the petitioner's testimony on the witness stand at this hearing is further evidence of his lack of attachment to the principles of the Constitution of the United States. This testimony and the evasive answers given to direct questions touching on his loyalty to this country if granted citizenship are sufficient in and of themselves to satisfy the court that he is not attached to the principles of the Constitution. In this connection I think it appropriate to quote from In re Saralieff, D.C., 59 F.2d 436, 437:

"But the right to amend the Constitution, and to advocate its alteration, is a privilege of the citizen, and not of an alien. One who entertains the views expressed by the applicant is not 'attached to the principles of the Constitution,' and is not 'well disposed' toward the same.

"He is not 'well disposed' because he is hostile to our form of government. He is not 'attached to the principles of the Constitution' because there is lacking such a conviction as would lead him to actively support and defend the same.

"Citizenship is available for aliens who in good faith, by example, and mental attitude disclose their sincere adherence to the political philosophy of the Constitution. Those who come in any other frame of mind are asking for a privilege that they have no right to receive. No matter how well founded their political beliefs may be, conformity to principles of the Constitution is indispensable."

Further, in that connection, I refer to the petitioner's testimony regarding his at-titude in case the United States became involved in another war.

■ The Girouard Case (Girouard v. United States) 328 U.S. 61, 66 S.Ct. 826, as I understand it, holds that a refusal to take up arms in defense of the United States on purely religious grounds does not bar an applicant from citizenship. However, the Girouard case does not hold that a person (not opposed to war for conscientious reasons) may have the view that he will bear arms or support this country only if in his opinion such war is justifiable. The petitioner here testified that he is not a conscientious objector. Yet he says he will support this country only if we are attacked. An applicant for citizenship cannot bargain and specify his terms for citizenship. The Girouard case does not hold that. It recognized that if Congress made the bearing of arms a prerequisite to citizenship, such condition ought to be recognized but that, in the absence of such congressional action, a refusal to bear arms because of religious scruples was no bar. The Supreme Court said, "One may serve his country faithfully and devotedly, though his religious scruples make it impossible for him to shoulder a rifle."

Congress has laid down the requirement that the Court be satisfied that the petitioner for citizenship during a five-year period immediately preceding the date of his application "behaved as a man * * * attached to the principles of the Constitution of the United States and well disposed to the good order and happiness of the same."

Attachment to the principles of the Constitution and disposition to the good order and happiness of the United States are incompatible with a belief that it is each citizen's prerogative to decide for himself whether to support this country in case of international conflict, and that such decision rests upon the individual's views of that conflict. Justice Murphy, speaking for the Supreme Court in the Schneiderman case, said this about American citizenship: "* * * it is safe to assert that nowhere in the world today is the right of citizenship of greater worth to an individual than it is in this country. It would be difficult to

exaggerate its value and importance. By many it is regarded as the highest hope of civilized men."

 Citizenship in the United States demands a loyalty of its citizens of a quality equal to the rights and privileges conferred by that citizenship. To state the contention of the petitioner, that his loyalty to this country in the event he is admitted to citizenship will depend on the character of the dispute, is sufficient to show his lack of attachment to the principles of the Constitution.

When asked where his sympathies would lie in case of a war between this country and a country having a Communistic form of government, the petitioner's answers were anything but direct. He chose to be evasive. He was unwilling to say unqualifiedly that he would support this country in such event. After repeated questions from the Court on this point, he was asked this question: "As between this government and any government which might have a Communist form of government, would you support that government instead of this government?"

This was his answer: "Not because it is a Communist government; that is merely juggling with words, because, according to my understanding of it, a Communist state is a democratic state, and we are introducing a lot of jargon which becomes more or less meaningless, meaning, in other words, I would under any and all circumstances become a mere cog in the wheel."

Again, in another part of his testimony, this was his answer to a question put by the Government's Attorney:

"Q. Then if Congress declares war, for reasons known to Congress, for the particular situation that exists, would you unequivocally take up arms for the United States, notwithstanding that the United States may be at war with a government that has a Marxist political-economic-social system?

"A. For Congress to declare war without taking me into its confidence as to objectives, it no longer becomes a democratic Congress."

Nothing more than the answers to these questions need be brought out to indicate that this petitioner, irrespective of his Communist Party membership, is not attached to the principles of the Constitution of the United States and that he is not disposed to the good order and happiness of the United States.

For all three reasons given, his petition for citizenship is denied.