## MARTINEZ v. NEELLY.
### No. 10517.

United States Court of Appeals,
Seventh Circuit.
May 21, 1952.

Rehearing Denied June 7, 1952.

Eugene Cotton, Chicago, Ill. (Cotton, Fruchtman & Watt, Chicago, Ill., of counsel), for appellant.

Otto Kerner, Jr., U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., William Sylvester White, Jr., Asst. U. S. Atty., Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff by complaint, filed August 25, 1949, sought a review under § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, of an order of the Assistant Commissioner of Immigration and Naturalization, dated March 22, 1949, directing plaintiff's deportation to Mexico. Defendant on numerous grounds moved to dismiss the complaint, which motion was allowed by the District Court, October 1, 1951. From this order of dismissal the appeal comes to this court.

The District Court in a memorandum opinion rendered in connection with its order of dismissal discusses and decides adversely to plaintiff every issue presented by his complaint. Subsequently and on March 10, 1952, the Supreme Court decided the case of Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, which not only confirmed the views of the District Court as expressed in its memorandum opinion but which we think is decisive of every issue presented on this appeal.

According to the allegations of the complaint, plaintiff, an immigrant from Mexico, was admitted to this country as a permanent resident on May 1, 1924, at the age of 20 years. He has two children, born in this country, ages 9 and 11, who are supported

by him. On April 8, 1941, a warrant for his arrest was issued upon the ground that subsequent to his entry into the United States he became a member of an organization which advocated the overthrow of the Government of the United States by force or violence and, subsequently, he was charged with residing in the United States in violation of the Immigration Act of October 16, 1918, as amended by the Acts of June 5, 1920 and June 28, 1940, 40 Stat. 1012, 41 Stat. 1008, 54 Stat. 673, 8 U.S.C.A. § 137, hereinafter referred to as the Act.

The pertinent provisions of the Act are as follows:

"Any alien who, at any time, shall be or shall have been a member of any one of the following classes shall be excluded from admission into the United States:

\* \* \* \* \* \*

"(c) Aliens who \* \* \* are members of \* \* \* any organization, association, society, or group, that believes in, advises, advocates, or teaches: (1) the overthrow by force or violence of the Government of the United States \* \* \*.

\* \* \* \* \* \*

"(g) Any alien who was at the time of entering the United States, or has been at any time thereafter, a member of any one of the classes of aliens enumerated in this section [1 of this Act], shall, upon the warrant of the Attorney General, be taken into custody and deported in the manner provided in sections 101, 102, 105, 108, 109, 113, 115, 116, 132, 136, 138, 139, 142–156, 158–166, 168, 169, 171, 173, 175, 177, and 178 of this title. The provisions of this section shall be applicable to the classes of aliens mentioned therein; irrespective of the time of their entry into the United States. \* \* \*"

Proceedings were conducted before the Immigration and Naturalization Service, commencing January 15, 1947, and an order was entered by the Assistant Commissioner of Immigration and Naturalization, affirmed by the Board of Immigration Appeals of the United States Department of Justice, directing plaintiff's deportation. As noted, plaintiff seeks a review of such proceedings under § 10 of the Administrative Procedure Act, and the major controversy here as well as in the court below is whether that Act, and particularly § 10, is applicable. In our view, for reasons subsequently shown, there is no occasion under the circumstances presented to consider or decide this issue. More pointedly, it is presently immaterial whether the review provisions of the Administrative Procedure Act are applicable to a deportation proceeding.

Plaintiff in his complaint alleges:

"In or about the year 1932 plaintiff joined the Communist Party of the United States of America and remained a member to the best of plaintiff's recollection for a period of four or five months when he voluntarily withdrew from membership in that party."

And further:

"Despite the 24 years that the plaintiff has resided in the United States and despite his record of constructive service in the community and although extended hearings were conducted in his case, the only evidence relied upon by the Immigration and Naturalization Service to sustain the charges lodged against the plaintiff was the fact that he was a member of the Communist Party of the United States of America. In this connection as alleged above the plaintiff admits that he was a member of that party for a period of 4 or 5 months in 1932. The Department of Immigration and Naturalization, however, claims that he was a member from 1931 to 1935. It is thus not disputed that for a period in excess of at least 13 years plaintiff has not been a member of that party."

Thus, it is definitely disclosed by the allegations of the complaint that the order of deportation rests upon the admitted fact that plaintiff subsequent to his entry into the United States was a member of the Communist Party, even though such membership had been terminated prior to the

institution of the proceedings under attack, as well as prior to the amendment of the Act of 1940, relied upon as authority for the order.

In the Harisiades case, there were two companion cases (Mascitti and Mrs. Coleman), all of whom, like the plaintiff here, had been long-time alien residents of this country and all of whom had children born in this country. Likewise as here, their admitted past membership in the Communist Party had been severed prior to the proceeding which resulted in the order for their deportations. In our view, every issue raised by plaintiff's complaint was decided adversely to him by the Supreme Court in the Harisiades case. Certainly that is so as to all constitutional and legal issues. It is true the court found it unnecessary under the circumstances before it to decide whether a deportation proceeding was subject to review under the Administrative Procedure Act and, as we have noted, we think it unnecessary to decide the question in the instant case.

When this case was heard in the District Court, it could well have been contended that past membership in the Communist Party was not in itself sufficient to justify an order of deportation; in fact, it was so held in Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082, decided in 1939. Obviously, the court in that case had before it the Act as it existed prior to the 1940 amendment. In the Harisiades case, the deportation orders rested, as does that of the instant case, upon the Act as amended in 1940. Based upon the 1940 amendment, the Supreme Court in the latter case left no room for doubt but that its holding in the Kessler case was no longer the law. In a footnote in 342 U.S. at page 589, 72 S.Ct. at page 519, the court observed:

"When this Court, in 1939, held that that Act reached only aliens who were members when the proceedings against them were instituted, Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082, Congress promptly enacted the statute before us, making deportation mandatory for all aliens who at any time past have been members of the proscribed organizations."

And again, the court, in discussing the effect of the 1940 amendment, stated 342 U.S. at page 593, 72 S.Ct. at page 521:

"In 1939, this Court decided Kessler v. Strecker, 307 U.S. 22, 59 S.Ct. 694, 83 L.Ed. 1082, in which it was held that Congress, in the statute as it then stood, had not clearly expressed an intent that Communist Party membership remained cause for deportation after it ceased. The Court concluded that in the absence of such expression only contemporaneous membership would authorize deportation.

\*   \*   \*   \*   \*   \*

"The reaction of Congress was that the Court had misunderstood its legislation. In the Act here before us it supplied unmistakable language that past violators of its prohibitions continued to be deportable in spite of resignation or expulsion from the party. It regarded the fact that an alien defied our laws to join the Communist Party as an indication that he had developed little comprehension of the principles or practice of representative government or else was unwilling to abide by them."

The Supreme Court, in disposing of the contention that the proceedings against the petitioners must be nullified for failure to conform to the requirement of the Administrative Procedure Act, stated 342 U.S. at page 583, 72 S.Ct. at page 515:

"Validity of the hearing procedures is questioned for noncompliance with the Administrative Procedure Act, which we think is here inapplicable."

It is not entirely clear why the court thought the Administrative Procedure Act "inapplicable," but in our view it was because each of the petitioners admitted past membership in the Communist Party. We so think because there immediately follows the statement, "Admittedly, each of these deportations is authorized and required by the letter, spirit and intention of the statute." It is true the court points out in a footnote that under § 12 of the Administrative Procedure Act, "\* \* \* no procedural requirement shall be mandatory as to any

agency proceeding initiated prior to the effective date of such requirement." Such footnote, as we view it, was merely a suggestion of an additional reason why the Administrative Procedure Act was inapplicable.

Our sole concern as to whether the Harisiades case completely disposes adversely to the plaintiff of all the issues raised in the complaint arises from his allegation:

"The record so made in the deportation hearing fails to establish by substantial evidence that the Communist Party of the United States of America in fact believed in or advocated the overthrow of the Government of the United States by force or violence during the membership of the plaintiff, or that the said party distributed literature containing such advocacy."

It is true that in each of the cases there before the court there had been a finding, see page 584 of 342 U.S., page 516 of 72 S.Ct., "that the Communist Party during the period of the alien's membership taught and advocated overthrow of the Government of the United States by force and violence." A study of the opinion, however, is convincing that such finding was not regarded as essential and that membership in the Communist Party brings the alien within the condemnation of the statute. That the court so considered is shown by the first paragraph of the opinion, which states, 342 U.S. at page 581, 72 S.Ct. at page 515:

"The ultimate question in these three cases is whether the United States constitutionally may deport a legally resident alien because of membership in the Communist Party which terminated before enactment of the Alien Registration Act of 1940."

In discussing the Act of 1940, the court stated 342 U.S. at page 590, 72 S.Ct. at page 519:

"This Act was approved by President Roosevelt June 28, 1940, when a world war was threatening to involve us, as soon it did. Communists in the United States were exerting every effort to defeat and delay our preparations.

Certainly no responsible American would say that there were then or are now no possible grounds on which Congress might believe that Communists in our midst are inimical to our security."

And in discussing the congressional purpose, the court stated 342 U.S. at page 593, 72 S.Ct. at page 520:

"During all the years since 1920 Congress has maintained a standing admonition to aliens, on pain of deportation, not to become members of any organization that advocates overthrow of the United States [Government] by force and violence, a category repeatedly held to include the Communist Party. These aliens violated that prohibition and incurred liability to deportation. They were not caught unawares by a change of law. There can be no contention that they were not adequately forewarned both that their conduct was prohibited and of its consequences."

In our view, and we so hold, membership in the Communist Party, present or past, is as a matter of law ground for deportation. The time has passed when it can be successfully contended that proof is required that the Communist Party is or has been an organization which advocates "the overthrow by force or violence of the Government of the United States." It follows that plaintiff's allegation of a lack of substantial evidence on this score is without legal force or effect. In other words, if plaintiff were allowed a review of the administrative procedure and should establish the allegations of his complaint in this respect, it would not nullify the order of deportation. And it follows that the allegations of the complaint are insufficient to call for a review under the Administrative Procedure Act, and this irrespective of whether that Act might otherwise be applicable.

Congress by the Act of 1950 expressly provided for the deportation of "Any alien who was at the time of entering the United States, or has been at any time thereafter, a member" of the Communist Party of the United States. Title 8 U.S.C.A. § 137,

Pars. (1), (2) (C), (3) and § 137–3. While we do not rest our opinion upon this recent enactment, it is apparent that plaintiff is subject to deportation even though the present order be nullified. Having admitted membership in such party, the constitutionality of the recent Act would be the only attack open to the plaintiff. However, any hope for success in this respect would appear to be a remote possibility in view of the holding of the Supreme Court in the Harisiades case relative to the 1940 amendment. At any rate, it certainly would be immune from any contention that it constituted an *ex post facto* law in violation of § 9 of Article I of the Constitution, Harisiades, 342 U.S. at page 594, 72 S.Ct. 512. It follows that success by plaintiff in the instant proceeding would be an empty victory; it could result in nothing more than a postponement of the evil day.

The order of dismissal is
Affirmed.