**UNITED STATES v. SCHNEIDER-
MAN et al.**

Cr. No. 22131.

United States District Court,
S. D. California, Central Division.

Aug. 18, 1952.

See also D.C., 106 F.Supp. 892; D.C., 106
F.Supp. 941.

Walter S. Binns, U. S. Atty., Norman Neukom, Asst. U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., Los Angeles, Cal., Lawrence K. Bailey, Sp. Asst. to Atty. Gen., for plaintiff.

Ben Margolis, Los Angeles, Cal., for defendants Oleta O'Connor Yates, Mary Bernadette Doyle and Albert Jason Lima.

Norman Leonard, San Francisco, Cal., for defendants Loretta Starvus Stack, Ern-

est Otto Fox, also known as Ernest Otto Fuchs, and Frank Carlson, also known as Solomon Szkolnick.

Leo A. Branton, Jr., Los Angeles, Cal., for defendants Henry Steinberg, Ben Dobbs, also known as Benjamin Isgur and Carl Rude Lambert.

A. L. Wirin, Los Angeles, Cal., for defendants Al Richmond, also known as Abraham Richman, Rose Chernin Kusnitz and Frank Efroim Spector.

Alexander H. Schullman, Los Angeles, Cal., for defendants Philip Marshall Connelly and Dorothy Healey Connelly, charged as Dorothy Rosenblum Healey.

MATHES, District Judge.

Fourteen defendants herein have been tried and found guilty by the jury of conspiring to commit offenses against the United States, 18 U.S.C.A. § 371, prohibited by the Smith Act, 54 Stat. 670 (1940); 18 U.S.C.(1946 ed.) § 10; id. (1948 ed.) § 2385, "by (1) wilfully * * * advocating and teaching the duty and necessity of overthrowing the Government of the United States by force and violence * * * and by (2) wilfully * * * helping to organize as the Communist Party of the United States of America * * * persons who teach and advocate the overthrow * * * of the Government of the United States by force and violence, with the intent of causing the * * * overthrow * * * of the Government * * * by force and violence as speedily as circumstances would permit."

At the close of the Government's case in chief, the defendants moved for a judgment for acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., and this motion was denied. Upon the close of the evidence, the motion was renewed, ruling was reserved, and the case was submitted to the jury. The defendants now urge that the motion be granted and a judgment of acquittal entered notwithstanding the verdict, Fed.R.Crim.P. 29(b). An alternative motion for a new trial, Fed.R.Crim.P. 33, and a motion in arrest of judgment, Fed.R.Crim.P. 34, are also presented.

Rule 29(a) directs the court to "order the entry of judgment of acquittal * * * if the evidence is insufficient to sustain a conviction * * *." The rule is silent as to the test to be applied in measuring the sufficiency of the evidence to sustain a verdict of guilty.

In Curley v. United States, D.C. Cir., 1947, 81 U.S.App.D.C., 160 F.2d 229, 232, certiorari denied, 1947, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850, the court states: "The true rule * * * is that a trial judge, in passing upon a motion for directed verdict of acquittal, must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt."

There is an apparent conflict between the view thus expressed in Curley v. United States, supra, 160 F.2d at page 232, and that expressed in United States v. Feinberg, 2 Cir., 1944, 140 F.2d 592, 594, certiorari denied, 1944, 322 U.S. 726, 64 S.Ct. 943, 88 L.Ed. 1562, where Judge Learned Hand declared "the standard of evidence necessary to send a case to the jury is the same in both civil and criminal cases; and * * * given evidence from which a reasonable person might conclude that the charge in an indictment was proved, the court will look no further, the jury must decide, and the accused must be content with the instruction that before finding him guilty they must exclude all reasonable doubt."

But the "true rule" of the Curley case and the "standard of evidence" set up in the Feinberg case are found upon analysis to be one and the same. See United States v. Cohen, 2 Cir., 1944, 145 F.2d 82, 86, certiorari denied, 1945, 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637; United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503, 504. Both are obviously intended to clarify the oft-stated requirement that there must be "substantial evidence" of guilt to warrant submission of the case to the jury. Cf. Pierce v. United States, 1920, 252 U.S. 239, 251, 40 S.Ct. 205, 64 L.Ed. 542; Stoppelli v. United States, 9 Cir., 1950, 183 F.2d 391, 393, certiorari denied, 1950, 340 U.S. 864,

71 S Ct. 88, 95 L.Ed. 631; Crono v. United States, 9 Cir., 1932, 59 F.2d 339, 340.

As Judge Sanborn explained in Isbell v. United States, 8 Cir., 1915, 227 F. 788, 792–793: "If there is, at the conclusion of a trial, no substantial evidence of facts which exclude every other hypothesis but that of guilt, there is no substantial evidence of the guilt of the accused, for facts consistent with his innocence are never evidence of his guilt. * * * This is the only question the court is required or permitted to determine * * * and where there [is] any substantial evidence inconsistent with the innocence of the accused, although it may have been contradicted and overwhelmed by the testimony to the contrary, the weight of the evidence, the credibility of the witnesses and the guilt or innocence of the defendant are left to the determination of the jury."

Under our common-law system of justice the ultimate standard in the application of every rule is one of reasonableness. See Funk v. United States, 1933, 290 U.S. 371, 383–385, 54 S.Ct. 212, 78 L.Ed. 369; Pound, The Spirit of the Common Law, 182–183 (1921); Pound, Justice According to Law, 60 (1951).

In keeping with that standard the test in every case must be whether the evidence is such that the jury might reasonably base a finding of guilt thereon. If so, the evidence in support of the charge is held to be substantial and sufficient to sustain a conviction. Stoppelli v. United States, supra, 183 F.2d at pages 393–394; cf. Tennant v. Peoria etc. Ry. Co., 1944, 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520; Sioux City & P. Railroad Co. v. Stout, 1873, 17 Wall. (84 U.S.) 657, 663–665, 21 L.Ed. 745.

To apply the test—to review the evidence and determine whether the jury might reasonably base a finding of guilt thereon—involves three steps: First—finding every fact which the jury might reasonably find from the evidence in support of the verdict; Second—finding every fact which the jury might reasonably infer from all facts which the jury might reasonably find have been proved—i. e. drawing "jus-tifiable" or reasonable inferences of fact; and Third—determining whether all facts which reason permits to be found from the evidence in favor of conviction plus all facts which reason permits to be inferred therefrom are sufficient to enable a jury reasonably to find every essential element of the charge.

If the facts which reason permits to be found from the evidence and the inferences which reasonably may be drawn therefrom can be combined to make out proof of the crime charged, the evidence must be held sufficient to sustain a conviction and the motion for judgment of acquittal accordingly denied.

For if the evidence be such that the verdict of guilt falls within the bounds of reason—within that realm of the debatable where reasonable persons may differ —then the decision of the jurors as judges of the facts must stand, unless it appear that the force of some extraneous circumstance or influence prevented the jurors from functioning as the law contemplates a jury should function. See Mattox v. United States, 1892, 146 U.S. 140, 147–150, 13 S.Ct. 50, 36 L.Ed. 917; Rakes v. United States, 4 Cir., 1948, 169 F.2d 739, 745, certiorari denied, 1948, 335 U.S. 826, 69 S.Ct. 51, 93 L.Ed. 380; Baker v. Hudspeth, 10 Cir., 1942, 129 F.2d 779, 782, certiorari denied, 1942, 317 U.S. 681, 63 S.Ct. 201, 87 L.Ed. 546; cf. Dennis v. United States, 1950, 339 U.S. 162, 171–172, 70 S.Ct. 519, 94 L.Ed. 734; Frazier v. United States, 1948, 335 U.S. 497, 513, 69 S.Ct. 488, 93 L.Ed. 1072; Clark v. United States, 1933, 289 U.S. 1, 53 S.Ct. 465, 77 L.Ed. 993; United States v. Ball, 1896, 163 U.S. 662, 674, 16 S.Ct. 1192, 41 L.Ed. 300.

Applying the stated test in the case at bar, it would seem beyond contention that the jury might reasonably have found from the evidence that the Communist Party is a "group * * * of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence with the intent of causing the * * * overthrow and destruction of the Government * *

by force and violence as speedily as circumstances would permit."

Indeed, there is persuasive argument that such is the common notoriety of this alleged objective of the Communist Party that the courts might properly take judicial notice of it. See Internal Security Control Act of 1950, § 2, 64 Stat. 987 (1950), 50 U.S.C.A. § 781(15); H.R.Rep. No. 2980, 81st Cong., 1st Sess. (1950); Dennis v. United States, 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137; Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 195, 71 S.Ct. 624, 95 L.Ed. 817; American Communications Ass'n v. Douds, 1950, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925; Schneiderman v. United States, 1943, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796; Martinez v. Neely, 7 Cir., 1952, 197 F.2d 462, certiorari filed July 21, 1952; Carlson v. Landon, 9 Cir., 1951, 187 F.2d 991, 997, affirmed, 1952, 342 U.S. 524, 72 S.Ct. 525; United States ex rel. Yokinen v. Commissioner, 2 Cir., 1932, 57 F.2d 707, certiorari denied, 1932, 287 U.S. 607, 53 S.Ct. 11, 77 L.Ed. 528; Murdoch v. Clark, 1 Cir., 1931, 53 F.2d 155, 157; Ungar v. Seaman, 8 Cir., 1924, 4 F.2d 80, 81; In re MacKay, N.D.Ind.1947, 71 F. Supp. 397, 398–399; United States ex rel. Fortmueller v. Commissioner, S.D.N.Y. 1936, 14 F.Supp. 484, 487; Ex parte Jurgans, D.Minn.1927, 17 F.2d 507, 511, affirmed sub nom. Jurgans v. Seaman, 8 Cir., 1928, 25 F.2d 35; cf. Northern Trust Co. v. C. I. R., 7 Cir., 1940, 116 F.2d 96, 98; United States v. Polzin, D.Md.1942, 48 F. Supp. 476, 478; see also Carroll v. United States, 1925, 267 U.S. 132, 159–160, 45 S.Ct. 280, 69 L.Ed. 543; Brown v. Piper, 1875, 91 U.S. 37, 43, 23 L.Ed. 200; Morgan, Judicial Notice, 57 Harv.L.Rev. 269 (1944); 9 Wigmore, Evidence §§ 2565–2583 (3d ed. 1940); Holdsworth, A History of English Law, Vol. IX, pp. 135–139 (1944); Strahorn, The Process of Judicial Notice, 14 Va.L.Rev. 544 (1928); Thayer, A Preliminary Treatise on Evidence at the Common Law, 277–312 (1898). Contra: Stasiukevich v. Nicolls, 1 Cir., 1948, 168 F.2d 474, 479–480.

The evidence establishes without dispute that the defendants were members and officers or functionaries of varying degrees of standing and activity in the Communist Party during the period covered by the indictment. It is true of course, as § 4(f) of the Internal Security Act of 1950, 64 Stat. 987, 992 (1950), 50 U.S.C.A. § 783 (f), provides, that "Neither the holding of office nor membership in any Communist organization by any person shall constitute per se a violation * * * of any * * criminal statute." But the conviction here does not rest upon the mere fact that the defendants were members and officers of the Communist Party.

Rather the conviction at bar must be grounded upon the fact that it was reasonable to infer, from the evidence as to the fact and nature of their connections with and conduct in the Communist Party, that each of the defendants actively and understandingly supported the aims and objectives of the Communist Party, including that of teaching and advocating the necessity and duty of overthrowing and destroying the Government of the United States by force and violence, and helped to promote the organizational growth and the functioning of the Communist Party; all with the intent of causing or bringing about the forcible and violent overthrow and destruction of the Government as speedily as circumstances would permit.

From all the evidence in the case as to the nature and character and aims and objectives of the Communist Party, and the activities of those connected with that organization, it must be held that the jury with reason found the existence of the conspiracy charged in the indictment. Glasser v. United States, 1942, 315 U.S. 60, 80–81, 62 S.Ct. 457, 86 L.Ed. 680; Carlson v. United States, 10 Cir., 1951, 187 F.2d 366, 370–371, certiorari denied, 1951, 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367; United States v. Manton, 2 Cir., 1938, 107 F.2d 834, 839, certiorari denied, 1940, 309 U.S. 664, 60 S.Ct. 590, 84 L.Ed. 1012. And from all the evidence as to each of the defendants' connection with and conduct in the Communist Party, the jury was entitled with equal reason to infer that each defendant was a member of the conspiracy

with the specific intent charged in the indictment.

But the defendants urge the case at bar is a "free speech case," and hence that stricter proof must be required in keeping with the "clear and present danger" rule.

■ As pointed out in United States v. Schneiderman, S.D.Cal.1951, 102 F.Supp. 87, 95–96, the "clear and present danger" rule is intended to serve as the standard to be applied in testing the constitutionality on its face of a statute which restrains freedom of expression; to stand as the measure whereby to mark the narrow bounds of restraint upon speech and press which will be tolerated as reasonable and hence constitutional in the light of the prohibitions of the First Amendment, U.S. Const. Amend. I.

■ When invoked as here—not to test the constitutionality of the statute itself, Dennis v. United States, supra, 341 U. S. 494, 71 S.Ct. 857, 95 L.Ed. 1137—but to test whether the statute is constitutionally applied to a given case, the "clear and present danger" rule furnishes the standard whereby to gauge the sufficiency of the evidence as to the state of mind or intent of the accused. See Schenck v. United States, 1919, 249 U.S. 47, 51–52, 39 S.Ct. 247, 63 L.Ed. 470; Frohwerk v. United States, 1919, 249 U.S. 204, 209, 39 S.Ct. 249, 63 L. Ed. 561; Debs v. United States, 1919, 249 U.S. 211, 39 S.Ct. 252, 63 L.Ed. 566; Abrams v. United States, 1919, 250 U.S. 616, 619, 621, 626–628, 40 S.Ct. 17, 63 L.Ed. 1173; Whitney v. California, 1927, 274 U. S. 357, 366–367, 373, 374, 379, 47 S.Ct. 641, 71 L.Ed. 1095; Hartzel v. United States, 1944, 322 U.S. 680, 686–687, 690–694, 64 S.Ct. 1233, 88 L.Ed. 1534.

■ In the words of the learned justice who coined the "clear and present" danger phrase: "I do not doubt for a moment that * * * the United States constitutionally may punish speech that * * * is intended to produce a clear and imminent danger * * *." Abrams v. United States, supra, 250 U.S. at page 627, 40 S.Ct. 17, 21.

The indictment charges and the jury by their verdict found that the defendants at bar spoke and otherwise acted "with the intent of causing the * * * overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit." See Dennis v. United States, supra, 341 U.S. at pages 508–511, 71 S.Ct. 857.

■ Moreover, attention should not stray from the fact that the defendants here are charged with a conspiracy—a conspiracy to violate the Smith Act. Dennis v. United States, supra, 341 U.S. at pages 561, 572–574, 71 S.Ct. 857; Frohwerk v. United States, supra, 249 U.S. at pages 209–210, 39 S.Ct. 249, 63 L.Ed. 561; Goldman v. United States, 1918, 245 U.S. 474, 477, 38 S.Ct. 166, 62 L.Ed. 410. True, the conspiracy is to violate a statute which places some restraint upon freedom of expression. But as I read Dennis v. United States, supra, 341 U.S. 494, 71 S.Ct. 857, the Supreme Court holds that the statute, as there construed, fixes constitutional limitations upon the unqualified declarations of the First Amendment—having first found that the "clear" danger envisioned in the Smith Act lies in the proscribed advocacy or teaching with intent to bring about ultimately the overthrow of Government by means of force and violence, Dennis v. United States, supra, 341 U.S. at pages 499–500, 71 S.Ct. 857, and that "present" danger envisioned in the Smith Act consists in the specific intent of teacher or advocate to accomplish the objective of forcible overthrow as speedily as possible. Dennis v. U. S., 341 U.S. at pages 508–511, 71 S.Ct. 857.

■ Accordingly, since the facts which reason permits to be found from the evidence in the case at bar, combined with the inferences which reasonably may be drawn therefrom, establish substantial proof of the essential elements of the offense charged, the evidence must be held sufficient to sustain a conviction within the meaning of Rule 29(a) of the Federal Rules of Criminal Procedure.

■ As Mr. Justice Pitney put it in Pierce v. United States, supra, 252 U.S. at pages 251–252, 40 S.Ct. 205, 210, 64 L.Ed. 542: "There being substantial evidence in

924

support of the charges, the court would have erred if it had peremptorily directed an acquittal * * *. The question whether the effect of the evidence was such as to overcome any reasonable doubt of guilt was for the jury, not the court, to decide." See also Abrams v. United States, supra, 250 U.S. at page 619, 40 S.Ct. 17.

The defendants also urge that there is a fatal variance in the proof. Specifically the contention is that the only possible conspiracy shown by the evidence is one to violate the Smith Act by being or becoming a member of a proscribed "society, group, or assembly of persons * * * knowing the purposes thereof"; whereas the conspiracy charged is to violate the Smith Act by "advocating and teaching * * * [and by] helping to organize * * *."

It is true, as defendants say, that the evidence does establish proof of a conspiracy to violate those provisions of the Smith Act which forbid membership in a proscribed "society, group, or assembly of persons * * * knowing the purposes thereof", but the same evidence which establishes that proof also serves as proof of the charge set out in the indictment. For as stated before, the evidence as to a defendant's connection with, and position and activity and conduct in, the Communist Party is such as to permit the jury reasonably to draw the inference of membership in a conspiracy to advocate and teach and help to organize with the specific intent charged in the indictment.

"Conviction upon a charge not made would be sheer denial of due process." De Jonge v. Oregon, 1937, 299 U.S. 353, 362, 57 S.Ct. 255, 259, 81 L.Ed. 278. But conviction upon a charge made by means of evidence which would also support conviction upon a charge not made cannot possibly prejudice the accused.

Rule 52(a) of the Federal Rules of Criminal Procedure directs that "Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded." In the language of Berger v. United States, 1935, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314:

"The true inquiry, therefore, is not whether there has been a variance in proof, but whether there has been such a variance as to 'affect the substantial rights' of the accused. The general rule that allegations and proof must correspond is based upon the obvious requirements (1) that the accused shall be definitely informed as to the charges against him, so that he may be enabled to present his defense and not be taken by surprise by the evidence offered at the trial; and (2) that he may be protected against another prosecution for the same offense." Cf. Bennett v. United States, 1913, 227 U.S. 333, 338–339, 33 S.Ct. 288, 57 L.Ed. 531.

In my opinion these "obvious requirements" are fully met in the case at bar even though the evidence which sustains a verdict on the charge here made might also serve as more direct proof of a charge not made.

Among the claimed grounds for a new trial, the defendants assert errors of commission and omission in the instructions to the jury. In preparing the instructions, I have drawn freely upon the charge given by Judge Chesnut in United States v. Frankfeld, D.Md.1952, 103 F.Supp. 48, affirmed, 4 Cir.1952, 198 F.2d 679, as well as the instructions of Judge Medina in United States v. Foster, S.D. N.Y.1949, 9 F.R.D. 367, 373–394; affirmed sub nom. United States v. Dennis, 2 Cir. 1950, 183 F.2d 201; affirmed 1951, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, and have resolved doubts as to the law in favor of the accused. [The instructions to the jury are included as an appendix hereto.]

Another ground advanced in support of the motion for a new trial is the contention that publication in local newspapers and over local radio and television of news of an alleged "long-secret F.B.I. report" on the claimed objective of the Communist Party to overthrow the Government by force and violence deprived the defendants of a fair trial.

This report, the defendants assert, was designedly released by Director Hoover of the Federal Bureau of Investigation

for publication "on the very eve of the case going to the jury," with the obvious intent of attempting "to get into the jury room * * * through hysterical headlines * * *."

At the time the matter was called to the attention of the court on the morning following publication, the defense had completed presentation of arguments to the jury, and the prosecution was in the midst of the closing argument. The court then offered to permit the defense to reopen argument to the jury, and later offered to make inquiry of the jury as to whether any of them had heard or read of the matter and, if so, whether any juror felt influenced by such extraneous publicity or felt unable for any reason to continue to sit with absolute impartiality and decide the case solely upon the evidence adduced in the courtroom.

At that time, before the case was submitted to the jury, and after pointing to the fact that four alternate jurors had sat throughout the six months of trial, the court advanced the suggestion that, in the event one or more of the jurors might have felt the influence of any such publicity, alternates could be called upon to serve. Spivey v. United States, 5 Cir., 1940, 109 F.2d 181, 186, certiorari denied, 1940, 310 U.S. 631, 60 S.Ct. 1079, 84 L.Ed. 1401; cf. United States v. Gale, 1883, 109 U.S. 65, 69, 3 S.Ct. 1, 27 L.Ed. 857.

The defendants preferred not to have the inquiry made as proposed, but requested the court to poll the jury with the single query whether any had heard or read of the report, it being the position of the defense that any further inquiry would be immaterial. See Reining v. United States, 5 Cir., 1948, 167 F.2d 362, 365, certiorari denied 1948, 335 U.S. 830, 69 S.Ct. 49, 93 L.Ed. 383; cf. Bowers v. United States, 9 Cir., 1917, 244 F. 641, 649. The court declined to limit the inquiry as the defendants requested, and no mention of the matter was made in submitting the case to the jury other than to caution the jurors repeatedly that their verdict must be based solely upon the evidence in the case as adduced in the courtroom. See United States v. Griffin, 3 Cir., 1949, 176 F.2d

727, 731, certiorari denied, 1950, 338 U.S. 952, 70 S.Ct. 478, 94 L.Ed. 588.

Now, after a verdict of guilty, the defendants wish to support their motion for a new trial by themselves conducting among the jurors substantially the inquiry which the court offered to conduct before the case was submitted to the jury. To permit the inquiry following the conviction would avail the defendants nothing in the circumstances at bar, cf. United States v. McGrady, 7 Cir., 1951, 191 F.2d 829, 831; Bowers v. United States, supra, 244 F. at page 649, for as was said in United States v. Griffin, supra, 176 F.2d at page 731: "There is no proof that the jury or any member of it saw or heard the stories mentioned, but assuming that this did occur, there is not the slightest reason for inferring that real harm resulted * * *."

■ Moreover, subjecting the jurors to such an inquiry after verdict would be to violate without warrant the secrecy of the jury room. As Judge Prettyman, when sitting in the Fourth Circuit, so well said in Rakes v. United States, supra, 169 F.2d at pages 745–746: "The inviolability of the jury room from outside influence of any sort, actual or potential, is a prime necessity in the administration of justice. That unqualified rule requires that if a person, whether on the jury or not, knows of such outside influence or an attempt at it, he must at once report his information to the court. The same rule requires that jurors are not be harassed in any manner because of a verdict they have rendered. If jurors are conscious that they will be subjected to interrogation or searching hostile inquiry as to what occurred in the jury room and why, they are almost inescapably influenced to some extent by that anticipated annoyance. The courts will not permit that potential influence to invade the jury room. He who makes studied inquiries of jurors as to what occurred there acts at his peril, lest he be held as acting in obstruction of the administration of justice. Much of such conversation and inquiry may be idle curiosity, and harmless, but a searching or pointed examination of jurors in behalf of a party to a trial is to be emphatically

condemned. It is incumbent upon the courts to protect jurors from it."

In Clark v. United States, supra, 289 U. S. at pages 12–13, 53 S.Ct. at page 468, Mr. Justice Cardozo observed: "The books suggest a doctrine that the arguments and votes of jurors, the *media concludendi*, are secrets, protected from disclosure unless the privilege is waived. * * * For the origin of the privilege we are referred to ancient usage, and for its defense to public policy. Freedom of debate might be stifled and independence of thought checked if jurors were made to feel that their arguments and ballots were to be freely published to the world. The force of these considerations is not to be gainsaid ."

Additionally, it should be noted that the Committee on Professional Ethics and Grievances of the American Bar Association has held, in Opinion 109 issued March 10, 1934, that "A lawyer ethically has no right, after verdict, to seek out one or more members of a jury before whom he has tried a case and question them concerning how certain aspects of the case impressed them, what they thought of certain evidence on both sides of the case, and how certain members of the jury stood on certain questions, * * *." [See American Bar Association, Opinions of the Committee on Professional Ethics and Grievances, 212 (1936).]

It is regrettable that the report was released for publication at an unfortunate time from the standpoint of all concerned with this trial. Cf. Reining v. United States, supra, 167 F.2d at page 365. However, the comments of Mr. Justice Holmes in Holt v. United States, 1910, 218 U.S. 245, 250–251, 31 S.Ct. 2, 5, 54 L.Ed. 1021, seem singularly appropriate here: " * * * one of the grounds for demanding a new trial * * * involve[s] the question how far the jury lawfully may be trusted to do their duty when the judge is satisfied that they are worthy of the trust. The jurymen were allowed to separate during the trial, always being cautioned by the judge to refrain from talking about the case with anyone, and to avoid receiving any impression as to the merits except from the proceedings in court. The counsel for the prisoner filed his own affidavit that members of the jury had stated to him that they had read the Seattle daily papers with articles on the case, while the trial was going on. * * * The court refused to receive counter affidavits, but, assuming in favor of the prisoner that the jurors had read the articles, he denied the motion. * * * If the mere opportunity for prejudice or corruption is to raise a presumption that they exist, it will be hard to maintain jury trial under the conditions of the present day."

These observations of the scholarly Justice, written for a unanimous court in 1910 before the advent of radio or television, would seem *a multo fortiorari* sound today. United States v. Weber, 2 Cir., 1952, 197 F.2d 237, 239; United States v. Leviton, 2 Cir., 1951, 193 F.2d 848, 857, certiorari denied, with opinion by Mr. Justice Frankfurter, 1952, 343 U.S. 946, 72 S.Ct. 860; United States v. Keegan, 2 Cir., 1944, 141 F.2d 248, 258, reversed on other grounds, 1945, 325 U.S. 478, 65 S.Ct. 1203, 89 L.Ed. 1745.

 There has been no showing that the jury at bar did not function as a jury should function, free from all extraneous influence, in the best tradition of this outstandingly characteristic institution of the Anglo-American legal system. And the presumption is that the jurors faithfully performed their official duties. Baker v. Hudspeth, supra, 129 F.2d at page 782; Cavness v. United States, 9 Cir., 1951, 187 F.2d 719, 723, certiorari denied, 1951, 341 U.S. 951, 71 S.Ct. 1019, 95 L.Ed. 1374.

Finding no errors in the conduct of the trial which can fairly be said to affect any substantial rights of the defendants, proper exercise of discretion requires that the motion for a new trial be denied.

 The motion in arrest of judgment does not warrant discussion in addition to what was said in United States v. Schneiderman, supra, 102 F.Supp. 87. Since the indictment does clearly "charge an offense", Dennis v. United States, supra, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137, and this court concededly has jurisdiction of the offense charged, there is no reason to arrest judgment.

The defendants were lawfully and fairly indicted, tried and convicted. There appears no basis in fact or law to acquit, arrest the judgment, or order another trial.

 The presumption of innocence, with which our common-law system of justice favors every defendant throughout the trial, ceased when the jury returned their unanimous verdict of "Guilty." That verdict being fully supported by the evidence, the law now presumes the facts to be as the jury found them.

The motion in arrest of judgment is denied. The motion of each defendant for a judgment of acquittal and the alternative motion for a new trial are also denied.

## APPENDIX

Instructions to the Jury.

Members of the Jury:

You have heard the evidence and the argument. Now it is the duty of the Court to instruct you as to the law governing the case. It is your duty, as jurors, to follow the law as stated in the instructions of the Court and to apply the law so given to the facts as you find them from the evidence before you. You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.

Regardless of any opinion you may have as to what the law ought to be, it would be a violation of your sworn duty to base a verdict upon any other view of the law than that given in the instructions of the Court.

Unless otherwise indicated, each instruction given should be considered by you as referring separately and individually to each defendant on trial.

You have been chosen and sworn as jurors in this case to try the issues of fact presented by the allegations of the indictment and the denial made by the plea of the accused. You are to perform this duty without bias or prejudice as to any party. The law does not permit jurors to be governed by sympathy, prejudice, or public opinion. The accused and the public expect that you will carefully and impartially consider all the evidence, follow the law as stated by the Court and reach a just verdict, regardless of the consequences.

Neither patriotism nor any other consideration could justify you in applying to this case any standard of proof less strict than you would apply to the trial of persons on any other charge. You are not summoned here to take part in any struggle against Communism, but to discharge a function requiring the highest standards of impartiality.

An indictment is but a formal method of accusing a defendant of a crime. It is not evidence of any kind against the accused, and does not create any presumption or permit any inference of guilt.

The law presumes a defendant to be innocent of crime. Thus a defendant, although accused, begins the trial with a "clean slate"—with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of the charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt from all the evidence in the case.

A reasonable doubt is a fair doubt based upon reason and common sense and arising from the state of the evidence. It is rarely possible to prove anything to an absolute certainty. Proof beyond a reasonable doubt is established if the evidence is such as you would be willing to rely and act upon in the most important of your own affairs. A defendant is not to be convicted on mere suspicion or conjecture.

A reasonable doubt may arise not only from the evidence produced, but also from a lack of evidence. Since the burden is upon the prosecution to prove the accused guilty beyond a reasonable doubt of every essential element of the crime charged, a defendant has the right to rely upon a failure of the prosecution to establish such proof. A defendant may also rely upon evidence brought out on cross-examination of witnesses for the prosecution. The law does not impose upon a defendant the duty of producing any evidence.

928

A reasonable doubt exists in any case when, after careful and impartial consideration of all the evidence, the jurors do not feel convinced to a moral certainty that a defendant is guilty of the charge.

There are two types of evidence from which a jury may properly find a defendant guilty of an offense. One is direct evidence —such as the testimony of an eye witness. The other is circumstantial evidence—the proof of a chain of circumstances pointing to the commission of the offense.

As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that, before convicting a defendant, the jury be satisfied of the defendant's guilt beyond a reasonable doubt from all the evidence in the case.

In order to justify a verdict of guilty based in whole or in part upon circumstantial evidence, the facts in the chain of circumstances shown by the evidence must be consistent with the guilt of the accused, and inconsistent with every reasonable supposition of innocence.

If the facts and circumstances shown by the evidence are as consistent with innocence as with guilt, the jury should acquit the accused.

Once a defendant rests, no evidence thereafter received may be considered in connection with the case as to that defendant. Hence none of the evidence received after the close of the prosecution's case in chief may be considered in connection with the cases of defendants Dorothy Healey Connelly, Albert Jason Lima, Carl Rude Lambert, Philip Marshall Connelly, Rose Chernin Kusnitz, Al Richmond, Ernest Otto Fox, Henry Steinberg, Frank Efroim Spector, or Ben Dobbs, since those ten defendants rested their cases immediately following the close of the prosecution's case in chief.

Statements and arguments of counsel are not evidence in the case, unless made as an admission or stipulation of fact. When the attorneys on both sides stipulate or agree as to the existence of a fact, the jury must accept the stipulation as evidence and regard that fact as conclusively proved.

The court may take judicial notice of facts or events which are matters of common knowledge. No proof is required as to facts or events of which the court takes judicial notice. When the court declares it will take judicial notice of some fact or event, the jury must accept the court's declaration as evidence and regard as conclusively proved the fact or event which the court has judicially noticed.

The evidence in the case consists of the sworn testimony of the witnesses, all exhibits which have been received in evidence, all facts have been admitted or stipulated, all facts and events which have been judicially noticed, and all applicable presumptions stated in these instructions. Any evidence as to which an objection was sustained by the court, and any evidence ordered stricken by the court, must be entirely disregarded.

You are sworn to consider only the evidence in the case. But in your consideration of the evidence you are not limited to the bald statements of the witnesses. On the contrary, you are permitted to draw, from facts which you find have been proved, such inferences as seem justified in the light of your experience.

An inference is a deduction or conclusion which reason and common sense lead the jury to draw from facts which have been proved.

A presumption is an inference which the law requires the jury to make from particular facts, in the absence of convincing evidence to the contrary. A presumption continues in effect until overcome or outweighed by evidence to the contrary; but unless so outweighed the jury are bound to find in accordance with the presumption.

Unless and until outweighed by evidence to the contrary, the law presumes that private transactions have been fair and regular; that the ordinary course of business has been followed; and that the law has been obeyed.

You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves. A witness is presumed to speak the truth. But this pre-

sumption may be outweighed by the manner in which the witness testifies, by the character of the tesimony given, or by contradictory evidence. You should carefully scrutinize the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to indicate whether the witness is worthy of belief. Consider each witness's intelligence, motive and state of mind, and demeanor and manner while on the stand. Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and the extent to which, if at all, each witness is either supported or contradicted by other evidence.

Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony. Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience. In weighing the effect of a discrepancy, consider whether it pertains to a matter of importance or an unimportant detail, and whether the discrepancy results from innocent error or wilful falsehood. If you find the presumption of truthfulness to be outweighed as to any witness, you will give the testimony of that witness such credibility, if any, as you may think it deserves.

All evidence relating to any admission or incriminatory statement claimed to have been made by a defendant outside of court should be considered with caution and weighed with great care.

All evidence of a witness whose self-interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused should be considered with caution and weighed with great care.

In weighing the testimony given by former members of the Communist Party, you should consider whether the circumstances of their membership or of their leaving the party might have given rise to some hostility against the Communist Party, or against these defendants, or to some self-interest,

which might affect the accuracy or truthfulness of their testimony.

A witness may be discredited or impeached by contradictory evidence; or by evidence that at other times the witness has made statements which are inconsistent with the witness' present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness' testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.

The law does not compel a defendant to take the witness stand and testify, and no presumption of guilt may be raised and no inference of any kind may be drawn from the failure of a defendant to testify.

A defendant who wishes to testify, however, is a competent witness; and the defendant's testimony is to be judged in the same way as that of any other witness.

The law requires that a defendant who chooses to become a witness shall answer all questions put to him, unless the Court rules he is privileged to refuse on constitutional or other grounds. You were present when the Court held the defendant Yates to be in contempt for refusing to answer certain questions.

The fact that the defendant Yates refused to answer certain questions may be considered by the jury in determining the weight and credibility of her own testimony. But the fact that a defendant was held in contempt during the trial must be entirely disregarded in your deliberations, since the defendants are on trial under the charge set forth in the indictment, and none other.

In every crime there must exist a union or joint operation of act and intent. The burden is always upon the prosecution to prove both act and intent beyond a reasonable doubt.

A person is held to intend all the natural and probable consequences of acts knowing-

ly done. That is to say, the law assumes a person to intend all the consequences which one standing in like circumstances and possessing like knowledge should reasonably expect to result from any act which is knowingly done.

An act is done knowingly if done voluntarily and purposely, and not because of mistake or inadvertence or other innocent reason.

With respect to offenses such as charged in this case, proof of specific intent is required before there can be a conviction. Specific intent, as the term suggests, means more than a mere general intent to commit the act.

A person who knowingly does an act which the law forbids or who knowingly fails to do an act which the law commands, purposely intending to violate the law or recklessly disregarding the law, acts with specific intent.

It is not necessary for the prosecution to prove knowledge of the accused that a particular act or failure to act is a violation of law. Every one is held to know what the law forbids and what the law commands. However, evidence that the accused acted or failed to act because of ignorance of the law is to be considered in determining whether or not the accused acted or failed to act with specific intent as charged.

Intent and motive should never be confused. Motive is that which prompts a person to act. Intent refers only to the state of mind with which the act is done.

Personal advancement and financial gain are two well-recognized motives for much of human conduct. These laudable motives may prompt one person to voluntary acts of good, another to voluntary acts of crime.

Good motive alone is never a defense where the act done is a crime. If a person intentionally does an act which the law denounces as a crime, motive is immaterial except insofar as evidence of motive may aid determination of the issue as to intent.

The intent required to be proved in order to convict a defendant of the offense charged in the indictment is not only an intentional conspiracy knowingly and willfully to advocate and teach the necessity and duty of overthrowing and destroying the Government of the United States by force and violence, but also the further specific intent to cause or bring about the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit.

Thus the issue as to intent which you are called upon to determine in this case includes two essential elements, both of which must be proved beyond a reasonable doubt before any defendant may be found guilty of the charge.

Intent may be proved by circumstantial evidence. It rarely can be established by any other means. While witnesses may see and hear and thus be able to give direct evidence of what a defendant does or fails to do, there can be no eyewitness account of the state of mind with which the acts were done or omitted. But what a defendant does or fails to do may indicate intent or lack of intent to commit the offense charged.

In determining the issue as to intent the jury are entitled to consider any statements made and acts done or omitted by the accused, and all facts and circumstances in evidence which may aid determination of state of mind.

It is charged in the indictment that from on or about June 28, 1940, and continuously thereafter to and including the date of the filing of this indictment, in the Southern District of California, in the State of California, in the State of New York, and in other places to the grand jury unknown, William Schneiderman, Dorothy Rosenblum Healey, Albert Jason Lima, Oleta O'Connor Yates, Carl Rude Lambert, Philip Marshall Connelly, Rose Chernin Kusnitz, Al Richmond, also known as Abraham Richman, Ernest Otto Fox, also known as Ernest Otto Fuchs, Henry Steinberg, Loretta Starvus Stack, Mary Bernadette Doyle, Frank Efroim Spector, Frank Carlson, also known as Solomon Szkolnick, and Ben Dobbs, also known as Benjamin Isgur, the defendants herein, wilfully and knowingly did conspire with each other and with William Z. Foster, Eugene Dennis, John B. Williamson, Jacob Stachel,

Robert G. Thompson, Benjamin J. Davis, Jr., Henry Winston, John Gates, Irving Potash, Gilbert Green, Carl Winter, and Gus Hall, co-conspirators but not defendants herein, and with divers other persons to the grand jury unknown, to commit offenses against the United States prohibited by Section 2 of the Smith Act, by (1) wilfully and knowingly advocating and teaching the duty and necessity of overthrowing the Government of the United States by force and violence, with the intent of causing the aforesaid overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit; and by (2) wilfully and knowingly organizing, and helping to organize, as the Communist Party of the United States of America a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence, with the intent of causing the aforesaid overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit.

In furtherance of said conspiracy and to effect the objects thereof, the defendants and co-conspirators did commit, among others, the following

## Overt Acts:

1. On or about January 31, 1941, William Schneiderman, a defendant herein, did attend and participate in a meeting held at the Danish Hall, 164 Eleventh Street, Oakland, California.

2. On or about May 12, 1942, William Schneiderman, a defendant herein, did attend and participate in a meeting held at the Serbian Hall, 225 Valencia Street, San Francisco, California.

3. On or about June 27, 1943, William Schneiderman, Oleta O'Connor Yates, Albert Jason Lima, Carl Rude Lambert, and Henry Steinberg, defendants herein, did attend and participate in a convention of the Communist Party of the State of California, held at 121 Haight Street, San Francisco, California.

4. On or about October 17, 1943, William Schneiderman, Oleta O'Connor Yates and Carl Rude Lambert, defendants herein, did attend and participate in a convention of the Communist Party for Alameda County, held at 2229 Telegraph Avenue, Oakland, California.

5. On or about May, 1944, William Schneiderman and Oleta O'Connor Yates, defendants herein, did attend a National Convention of the Communist Party of the United States, held at the Riverside Plaza Hotel, New York City.

6. On or about May, 1945, William Schneiderman, Dorothy Rosenblum Healey, Oleta O'Connor Yates, Albert Jason Lima and Ernest Otto Fox, also known as Ernest Otto Fuchs, defendants herein, did attend and participate in a meeting held at the Danish Auditorium, 1359 W. 24th Street, Los Angeles, California.

7. On or about July 26, 27, and 28, 1945, William Schneiderman, Loretta Starvus Stack and Albert Jason Lima, defendants herein, did attend a National Convention of the Communist Party of the United States, held in New York City.

8. On or about August 18 and 19, 1945, William Schneiderman, Carl Rude Lambert, Loretta Starvus Stack, Al Richmond, also known as Abraham Richman, Albert Jason Lima, and Frank Carlson, also known as Solomon Szkolnick, did attend and participate in a convention of the Northern Section of the Communist Party of the State of California, held at 1621 Market Street, San Francisco, California.

9. On or about July 17 and 18, 1948, William Schneiderman, Dorothy Rosenblum Healey, Albert Jason Lima, Oleta O'Connor Yates, Carl Rude Lambert, Al Richmond, also known as Abraham Richman, Loretta Starvus Stack, and Mary Bernadette Doyle, defendants herein, did attend and participate in a convention of the Communist Party of the State of California held at Park Manor, Sixth Street and Western Avenue, Los Angeles, California.

10. On or about August 20, 1948, Mary Bernadette Doyle, a defendant herein, did attend and participate in a meeting of the Morgan Hull Club in San Diego, California.

11. On or about August 21, 1948, Loretta Starvus Stack, a defendant herein, did prepare and issue a directive and cause it to be circulated by the California State Committee of the Communist Party.

12. On or about August 21, 1948, Al Richmond, also known as Abraham Richman, a defendant herein, did issue a directive and cause it to be circulated by the California State Committee of the Communist Party.

13. On or about January 21, 1949, Henry Steinberg, a defendant herein, did attend and participate in a meeting;

14. On or about May 20, 1949, Rose Chernin Kusnitz, a defendant herein, did attend and participate in a meeting held at 847 South Grand Avenue, Los Angeles, California.

15. On or about December 7, 1949, William Schneiderman and Dorothy Rosenblum Healey, defendants herein, did attend and participate in a meeting at Park View Manor, 2200 West Seventh Street, Los Angeles, California.

16. On or about January 20, 1950, William Schneiderman, a defendant herein, did attend and participate in a meeting at Embassy Auditorium, Los Angeles, California.

17. On or about February 15, 1950, Mary Bernadette Doyle, a defendant herein, did attend and participate in a meeting held at 7891 Normandie Street, San Diego, California.

18. On or about April 6, 1950, William Schneiderman, a defendant herein, did attend and participate in a meeting at 3875 City Terrace Boulevard, Los Angeles, California.

19. On or about June 12, 1950, Albert Jason Lima, a defendant herein, did attend and participate in a meeting at 2200 West Seventh Street, Los Angeles, California.

20. On or about June 24, 1950, Philip Marshall Connelly, Mary Bernadette Doyle, and Albert Jason Lima, defendants herein, did attend and participate in a meeting at Park Manor, 607 South Western Avenue, Los Angeles, California.

21. On or about November, 1950, Ernest Otto Fox, also known as Ernest Otto Fuchs, a defendant herein, did prepare and issue a directive and cause it to be circulated.

22. On or about April 9, 1951, Carl Rude Lambert, a defendant herein, did attend and participate in a meeting at 405 De La Guerra Street, Santa Barbara, California.

23. On or about July 24, 1951, Oleta O'Connor Yates, a defendant herein, did attend and participate in a meeting at 124 West Sixth Street, Los Angeles, California.

Section 88 of Title 18 [now 18 U.S.C. § 371] of the United States Code provides in part that:

"If two or more persons conspire * * * to commit any offense against the United States, * * * and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be * * *" guilty of an offense.

A conspiracy is a combination of two or more persons by concerted action to accomplish a criminal or unlawful purpose, or to accomplish some purpose not in itself criminal or unlawful by criminal or unlawful means.

Mere similarity of conduct among various defendants and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests, does not necessarily establish the existence of a conspiracy.

In order to establish proof of a conspiracy, the evidence need not show that the parties to the conspiracy entered into any express or formal agreement, or that they directly, by words or in writing, stated between themselves what their object or purpose was to be, or the details thereof, or the means by which the object was to be achieved. It is sufficient if they, in any way or manner or through any contrivance, positively or tacitly came to a mutual understanding to accomplish a common and unlawful design. In other words,

when an unlawful end is sought to be accomplished, and two or more persons, actuated by the common purpose of accomplishing that end, work together understandingly in furtherance of the unlawful scheme, such persons may be said to have formed a conspiracy.

However, before you may find that a defendant has become a party to or member of a conspiracy, it must appear from the evidence beyond a reasonable doubt that such conspiracy was formed and that the defendant wilfully participated in the unlawful plan with specific intent to further the common purpose or design.

To participate wilfully means to participate voluntarily and purposely and with specific intent to violate the law, or with reckless disregard as to whether or not the act is a violation of law. That is to say, if a person—with understanding of the unlawful character of a plan—intentionally encourages, advises or assists, with the purpose of furthering the enterprise or scheme, he becomes a wilful participant—a conspirator.

One may become a party to or member of a conspiracy without full knowledge of all the details of the conspiracy, or of the means to be used. A person however who has no knowledge of a conspiracy, but happens to act in a way which furthers an object of the conspiracy, does not thereby become a conspirator. As stated before, there must be shown some wilful participation with intent to further the common purpose or design.

It has been said that "A conspiracy is a partnership in criminal purposes." The gist of the offense is a combination or agreement to violate the law. Hence one who knowingly and wilfully joins an existing conspiracy is charged with the same responsibility as if he had been one of the instigators or originators of the conspiracy.

If it appears from the evidence beyond a reasonable doubt (1) that the conspiracy was knowingly and wilfully formed as alleged in the indictment; (2) that the accused became parties to or members of the conspiracy at the inception of the plan or scheme or afterwards with the specific in-tent charged; and (3) that one or more of the conspirators knowingly committed, in furtherance of an object or purpose of the conspiracy, one or more of the overt acts charged; then the success or failure of the conspiracy to accomplish the common purpose or design is immaterial.

By the term "overt act" is meant any act committed by one of the conspirators to effect an object or accomplish a purpose of the conspiracy. The overt act need not be criminal in nature, if considered separately and apart from the conspiracy. It may be as innocent as the act of a man walking across the street, or driving an automobile, or using a telephone. It must, however, be an act which follows and tends to accomplish the plan or agreement, and must be knowingly done in furtherance of an object or purpose of the conspiracy charged in the indictment.

If you find from the evidence beyond a reasonable doubt that the conspiracy charged in the indictment has been proved, and that during the existence of the conspiracy, and within the three-year period immediately preceding the filing of the indictment in this case on December 21, 1951, one of the overt acts alleged was knowingly done by one of the conspirators, the conspiracy offense charged is then complete; and it is complete as to every person found by you to be a member of the conspiracy at the time the overt act was committed, regardless of which of the conspirators did the overt act.

In order then to establish, as to any defendant, the offense of conspiracy charged in the indictment, the evidence must show beyond a reasonable doubt:

*First*: That the conspiracy described was formed at or about the time alleged;

*Second*: That the accused knowingly and willfully became a party to or member of the conspiracy;

*Third*: That the accused, while a member of the conspiracy, had the specific intent to cause or bring about the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit;

934

*Fourth*: That one of the conspirators thereafter knowingly committed at least one of the overt acts charged, within the period of the statute of limitations; which is to say, during the three-year period next preceding the filing of the indictment—being the three-year period between December 21, 1948 and December 21, 1951; and

*Fifth*: That such act was committed in furtherance of an object or purpose of the conspiracy.

The indictment does not charge that the Communist Party is a conspiracy.

Even if you find the conspiracy charged in the indictment has been proved beyond a reasonable doubt, you may not infer that any particular individual was a party to or member of such conspiracy merely because the evidence shows him or her to have been a member or officer of the Communist Party.

During the course of the trial there have been various references to the case of Schneiderman v. United States, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. That case was not a prosecution under the Smith Act, and the Supreme Court did not there determine any of the issues raised by the indictment here.

Evidence as to that case was received on the issue of intent in this case, and is to be considered insofar as it may aid determination of that issue here.

Under our system of law, guilt of crime is a personal and individual matter. You may not convict any defendant merely by reason of the fact that you may find him or her to have been an officer or member of the Communist Party of the United States, no matter what you may find were the principles and doctrines advocated and taught by that party during the period covered by the indictment.

The gist of the charge here is that the defendants and others knowingly and wilfully conspired to commit offenses against the United States by violating in the manner set forth in the indictment the law known as Section 2 of the Smith Act.

At all times since June 28, 1940, Section 2 of the Smith Act has provided and now provides that: "Whoever knowingly or willfully advocates * * * or teaches the duty, necessity, desirability, or propriety of overthrowing or destroying the government of the United States * * * by force or violence, or * * * Whoever organizes or helps * * * to organize any society, group, or assembly of persons who teach, advocate, or encourage the overthrow or destruction of [the government of the United States] by force or violence * * *" shall be punished as the law provides.

As used in the Smith Act and the indictment:

(1) the word "advocate" means to urge or "to plead in favor of; * * * to support, vindicate, or recommend publicly * * *.";

(2) the word "teach" means "to instruct * * * show how * * * to guide the studies of * * *";

(3) the word "force" means the use of physical power other than the power of oral and written speech;

(4) the word "violence" means the use of great and destructive force.

The holding of a belief or opinion does not constitute advocacy or teaching. Hence the Smith Act does not prohibit persons who may believe that the violent overthrow and destruction of the Government of the United States is probable or inevitable from expressing that belief. Whether such belief be reasonable or unreasonable is immaterial. Prediction or prophecy is not advocacy.

Any advocacy or teaching which does not include the urging of force and violence as the means of overthrowing and destroying the Government of the United States is not within the issue of the indictment here and can constitute no basis for any finding against the defendants.

The kind of advocacy and teaching which is charged and upon which your verdict must be reached is not merely a desirability but a necessity that the Government of the United States be overthrown and destroyed by force and violence and not merely a propriety but a duty to overthrow and destroy the Government of the United States by force and violence.

The government referred to is the present Government of the United States, which does afford to the people democratic means for bringing about such changes as they desire; not some hypothetical future government which affords no such means.

You will note that the acts charged in the indictment are alleged to have been done "knowingly."

The purpose of adding the word "knowingly" to the statute defining the offense was to insure that no one would be convicted for an act done because of mistake or inadvertence or other innocent reason.

You will note further that the acts charged in the indictment are also alleged to have been done "wilfully."

An act is done "wilfully" if done voluntarily and purposely and with the specific intent to do that which law forbids.

The word "wilfully," as used in the indictment, means a statement or declaration made or other act done with the specific intent to cause or bring about the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit.

The defendants, in common with all other persons living under our Constitution, have a general right protected by the First Amendment to hold, express, teach and advocate opinions, even though their opinions are rejected by the overwhelming majority of the American people; and have the further right to organize or combine peaceably with other persons for the purpose of spreading and promoting their opinions more effectively.

Whether you agree with these opinions or whether they seem to you reasonable, unreasonable, absurd, distasteful or hateful has no bearing whatever on the right of other persons to maintain them and to seek to persuade others of their validity.

No inference that any of the defendants knowingly and wilfully conspired as charged in the indictment, or intended to cause or bring about the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit, may be drawn from the advocacy or teaching of socialism or other economic or political or social doc-

trines, by reason of any unpopularity of such doctrines or by reason of any opinion you may hold with respect to whether such doctrines, or the opinions or beliefs of any of the defendants, are unreasonable, distasteful, absurd or hateful.

The defendants, in common with other persons living under our Constitution, have the right protected by the First Amendment to criticize our system of Government and the Government itself, even though the speaking or writing of such critcism may undermine confidence in the Government or cause or increase discontent. They have the right also to criticize the foreign policy of the United States and the role being played by this country in international affairs; and to praise the foreign policy of other governments and the role being played by those governments in international affairs.

The right of the defendants to enjoy such freedom of expression is unaffected by whether or not the opinions spoken or published may seem to you to be crudely intemperate, or to contain falsehoods, or to be designed to embarass the Government. No inference of conspiracy to advocate and teach the necessity and duty of overthrow and destruction of the Government of the United States by force and violence, or of intent to cause or bring about the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit, may be drawn from such expressions alone.

Insofar as the Communist Party is concerned, the charge of the indictment in effect is that the defendants knowingly and wilfully conspired to organize and help to organize the Communist Party as a means or vehicle to advocate and teach the necessity and the duty of overthrowing and destroying the Government of the United States by force and violence as speedily as circumstances would permit. Thus the issue in this case, insofar as the Communist Party is concerned, is whether the defendants or any of them conspired with others to organize or help to organize and use the Communist Party for such advocacy and teaching as charged.

The verb "organize," as used in the Smith Act and the indictment, includes the recruit-

ing of new members and the forming of new units, and the regrouping or expansion of existing clubs, classes and other units of any society, party, group or other organization.

As stated before, the gist of the charge against the defendants is that they knowingly and wilfully conspired to commit offenses against the United States prohibited by Section 2 of the Smith Act. The defendants are not charged in the indictment with any other offense. So the fact, if you so find, that the defendants or any of them became members or officers of the Communist Party, or organized units of the Communist Party, or recruited members to the Communist Party, or published and circulated books, articles, magazines and newspapers, or caused to be written articles and directives in publications of the Communist Party, or conducted schools and classes, or planned to go "underground," or used fictitious names, would not be sufficient to sustain the burden of proof which rests upon the prosecution in this case. Such matters are only alleged to show the means or methods by which the conspiracy charged in the indictment was to be carried out.

Therefore, activities such as membership or officership in the Communist Party, or organization of units of the Communist Party, or recruitment of members, or the circulation of books, articles, magazines and newspapers, or the writing of articles and directives, or the conducting of schools and classes, or going "underground," or the use of fictitious names, are not to be considered unless you are satisfied beyond a reasonable doubt from all the evidence in the case that any such activities of the defendants or any of them, as you may find, were carried on as means or methods in furtherance of an object or purpose of the conspiracy alleged in the indictment.

No statement or writing of any kind purporting to declare the principles or theories of the Communist Party, or on any other topic, may be imputed to the Communist Party merely because made by some member, leader or officer of the party, or a teacher of a party school or class, in the course of party activities.

As stated before, the burden is upon the prosecution to prove beyond a reasonable doubt the existence of the conspiracy charged and the knowing and willful membership of the defendants in such conspiracy; and in addition that at least one of the overt acts charged in the indictment was committed within the three-year period between December 21, 1948 and the filing of the indictment on December 21, 1951; also that any such overt act was knowingly done in furtherance of an object or purpose of the conspiracy charged.

It is not necessary for the prosecution to prove that all the means or methods set forth in the indictment were, in fact, agreed upon to carry out the conspiracy, or that all such means or methods were actually used or put into operation. The evidence in the case on that issue is sufficient if it establishes to your satisfaction beyond a reasonable doubt that one or more of the means or methods described in the indictment was agreed upon to be used to effect or accomplish an object or purpose of the conspiracy as charged in the indictment.

In your consideration of the evidence you should first determine whether or not the conspiracy existed as charged in the indictment. If you conclude that such conspiracy did exist, you should next determine, as to each defendant, whether or not he or she was knowingly and willfully a party to or member of the conspiracy.

In considering whether or not a particular defendant was a member of the conspiracy, you must do so without regard to and independently of the statements or declarations of others. That is to say, you must determine the issue as to the conspiracy membership of a particular defendant from any evidence as to his or her own statements or declarations and acts or conduct.

If you find that the alleged conspiracy did exist and that all or any of the defendants were members of such conspiracy as charged, you should then determine whether the alleged club chairmen, teachers and others mentioned in the testimony, but not named as defendants in the indictment, were knowingly and willfully members of the conspiracy during the period of time covered in the indictment. In this determination, as in the determination of the conspiracy membership of any defendant, only the state-

ments or declarations and acts or conduct of the person whose membership is in question, and not the statements or acts of others, may be considered.

If and when the existence of the conspiracy charged in the indictment and the membership of all or any of the defendants in such conspiracy has been found, then the acts thereafter done and the statements or declarations thereafter made by any person found by you to be a member of the conspiracy may be considered in connection with the case as to any defendant whom you find to have been a member of the conspiracy, even though such acts and declarations may have been made in the absence and without the knowledge of such defendant, provided such acts were done and such statements or declarations were made during the continuance of such conspiracy and in furtherance of an object or purpose of the conspiracy.

So if you conclude from the evidence that a defendant was a member of the conspiracy, you may then consider as if made by him or her any statements or declarations of other members of the conspiracy, including other defendants who you may find were members of the conspiracy, provided such statements or declarations were made during the existence of the conspiracy and in furtherance of an object or purpose of the conspiracy as charged in the indictment. But otherwise any admission or incriminatory statement made outside of court by one defendant may not be considered as evidence against another defendant not present when the statement was made.

No statement, policy or program which you may find to have been proved with respect to the Communist Party may be imputed to any defendant merely because he or she was a member or officer of the Communist Party while said statement, policy or program was in effect.

Hence you may not use another person's statement or declaration as evidence against a defendant merely because you find that such person and such defendant were both officers or members of the Communist Party. The law does not make a member or officer of the Communist Party responsible for the acts and statements or declarations of any other member or officer merely because of their common membership or officership in the Communist Party.

Any such statement or declaration or policy or program may be imputed to a defendant only if and when you find from the evidence in the case that such statement or declaration or policy or program was declared or made in furtherance of an object or purpose of the conspiracy charged in the indictment, and by a party to or member of the conspiracy, and further find that the defendant was also a party to or member of the conspiracy.

Evidence has been received of alleged statements or declarations and teachings of instructors in alleged Communist Party schools and certain alleged statements or declarations and acts of other alleged members of the Communist Party, said to have occurred before the Smith Act became law on June 28, 1940.

Such evidence has been admitted as being relevant to the issue of what was the nature and character and aims and objectives of the Communist Party during the period covered by the indictment. That is to say, such evidence as to alleged activities of the Communist Party before June 28, 1940 has been admitted to aid the jury in determining whether or not during the period covered by the indictment—that is during the years since June 28, 1940 and more particularly during the three-year period immediately preceding the filing of the indictment on December 21, 1951— the Communist Party of the United States of America was a society, group, and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit, as alleged in the indictment.

Otherwise than as such evidence may aid the jury in determining the nature and character and aims and objectives of the Communist Party during the time covered by the indictment as above stated, evidence of alleged activities prior to June 28, 1940 is not to be considered by the jury as tending to establish the truth of any of the allegations of the indictment, except in this one particular: evidence as to alleged activities of any defendant in the Communist Party before June 28, 1940 may

be considered by the jury, as to that defendant only, in determining whether or not such defendant was a member of the Communist Party and had knowledge of the nature and character and aims and objectives of the Communist Party and of what may have been advocated and taught by the Communist Party during the period covered by the indictment.

Evidence as to alleged statements or declarations and teachings of instructors in alleged Communist Party schools and certain alleged statements or declarations and acts of other alleged members of the Communist Party, said to have occurred after the Smith Act became law on June 28, 1940 may be considered by you for the purposes just stated—as an aid for you to determine the nature and character and aims and objectives of the Communist Party during the three-year period immediately preceding the filing of the indictment on December 21, 1951.

And as stated before, if you find existence of the conspiracy charged in the indictment, and further find that all or any of the alleged club chairmen, teachers and others were knowingly and wilfully parties to or members of the conspiracy charged in the indictment, then the acts thereafter done and the statements or declarations thereafter made by those whom you find to be members of the conspiracy may be considered in connection with the case of any defendant whom you also find to be a member of the conspiracy, and may be treated as if the acts or statements or declarations were done or made by such defendant, provided such acts were done and such statements or declarations were made during the continuance of the conspiracy and in furtherance of an object or purpose of the conspiracy.

For the purpose of understanding, interpreting, construing and knowing the meaning of the langauge used in the exhibits in evidence, you may consider each book, pamphlet, paper and written or printed document in its entirety. In addition, you may look to the period of history in which the particular book or document was written, and the background, conditions and other circumstances under which the exhibit was written or prepared.

In political science, the word "revolution" means "fundamental change in political organization, or in a government or constitution; the overthrow or renunciation of one government or ruler, and the substitution of another, by the governed."

The term implies the fundamental character of the change sought, without reference to the means contemplated to achieve it. It may or may not be accomplished by the use of force and violence. In other words, revolution does not necessarily involve force and violence.

You may consider any meaning or interpretation given and any use made of an exhibit by the Communist Party, as shown by the evidence, in determining what was the nature and character and aims and objectives of the Communist Party during the period covered by the indictment; that is to say, whether the Communist Party of the United States of America was a society, group and assembly of persons who teach and advocate the overthrow and destruction of the Government of the United States by force and violence, as charged in the indictment.

In determining the issue as to the intent of any of the defendants, you may consider any meaning or interpretation given and any use made of any exhibit by such defendant, as shown by the evidence; including of course any statement or declaration such defendant may have made as to his or her understanding of the meaning of all or any part of the language of any exhibit.

You should bear in mind that it is not your own understanding of the meaning of the language of an exhibit, but the defendant's understanding of the meaning of such language that is to be considered in arriving at your verdict. You are to determine a defendant's understanding of the meaning of the language of an exhibit from any acts done or statements or declarations made by such defendant which may tend to indicate his or her understanding of the meaning of such language, and from all the facts and circumstances in evidence which may aid determination of that issue.

The sole question before you then is whether the defendants conspired, during the period charged in the indictment, for the purpose and with the intent charged in the

indictment. This charge relates only to past acts and statements and to the intent which accompanied past acts and statements at the time they were done or said.

The defendants are not being tried to determine what kind of people they are, or what sort of things they would be likely to do if allowed to remain at liberty. Rather it is your duty to determine whether the evidence establishes beyond a reasonable doubt that they did do in the past the things charged in the indictment.

As previously stated, the intent required to convict a defendant is not merely the intentional conspiracy to teach and advocate the necessity and duty of overthrowing and destroying the Government of the United States by force and violence. It must also appear beyond a reasonable doubt from the evidence in the case that such defendant had the further specific intent to cause or bring about the overthrow and destruction of the Government of the United States by force and violence as speedily as circumstances would permit.

The law of the United States permits the judge to comment to the jury on the evidence in the case. Such comments are only expressions of the judge's opinion as to the facts; and the jury may disregard them entirely, since the jurors are the sole judges of the facts.

During the course of a trial, I occasionally ask questions of a witness, in order to bring out facts not then fully covered in the testimony. Do not assume that I hold any opinion on the matters to which my questions related. Remember at all times that you, as jurors, are at liberty to disregard all comments of the Court in arriving at your own findings as to the facts.

It is the duty of the Court to admonish an attorney who, out of zeal for his cause, does something which is not in keeping with the rules of evidence or procedure.

You are to draw no inference against the side to whom an admonition of the Court may have been addressed during the trial of this case.

It is the duty of lawyers on each side to make objections when the other side offers evidence which counsel believes is not admissible under the rules of evidence.

It is the duty of the Court to decide whether under the rules of evidence, testimony or other evidence may be received.

Whenever the Court has sustained an objection to a question, you are to disregard that question, and may draw no inference from the wording of it or speculate as to what the witness would have said if permitted to answer. Nor may you assume any party has objected to a question because that side expected the answer, if given, to be unfavorable.

During the trial of this case the Court has permitted certain evidence to be introduced over the objection of counsel. In so ruling the Court has not determined or indicated any opinion as to the weight or effect of such evidence. In judging the credibility of witnesses and the weight and effect of evidence, you are not to consider the rulings or comments of the Court in admitting or rejecting evidence.

The punishment provided by law for the offense charged in the indictment is a matter exclusively within the province of the Court, and is not to be considered by the jury in arriving at an impartial verdict as to the guilt or innocence of the accused.

You are here to determine the guilt or innocence of the accused from the evidence before you. You are not called upon to return a verdict as to the guilt or innocence of any other person or persons. So if the evidence convinces you beyond a reasonable doubt of the guilt of the accused, you should so find even though you may believe one or more other persons are also guilty. But if any reasonable doubt remains in your minds after impartial consideration of all the evidence, you should acquit the accused.

It is your duty to give separate, personal consideration to the case of each individual defendant. When you do so, you must analyze what the evidence shows with respect to that individual, leaving out of consideration entirely any evidence admitted solely against some other defendant or defendants. Each defendant is entitled to have his case determined solely from his own acts and statements and the other evidence in the case which may be applicable to him.

The verdict must represent the considered judgment of each juror. In order to

return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

The attitude of jurors at the outset of their deliberation is important. It is seldom helpful for a juror, upon entering the jury room, to announce an emphatic opinion on the case or a determination to stand for a certain verdict. When a juror does that at the outset, individual pride may become involved, and the juror may later hesitate to recede from an announced position even when shown it is incorrect. You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth. You will make a worth-while contribution to the administration of justice if you arrive at an impartial verdict in this case.

There is nothing peculiarly different in the way a jury is to consider the proof in a criminal case from that in which all reasonable persons treat any question depending upon evidence presented to them. You are expected to use your good sense; consider the evidence for only those purposes for which it has been admitted and give it a reasonable and fair construction.

Bear in mind at all times that it would be a violation of your sworn duty to base a verdict upon anything but the evidence in the case.

If the accused be proved guilty, say so. If not proved guilty, say so. Remember at all times that a defendant is entitled to acquittal if any reasonable doubt remains in your minds.

Remember also that the question before you can never be: will the Government win or lose the case? The Government always wins when justice is done, regardless of whether the verdict be guilty or not guilty.

Under these instructions you may find all the defendants guilty or all of them not guilty, or you may find one or more of them guilty and the others not guilty of the charge.

At any time during your deliberations you may return into court your verdict of guilty or not guilty with respect to any defendant as to whom you have unanimously agreed.

As you recall, the case as to defendant Mary Bernadette Doyle has been severed from this trial because of her illness. Hence you are not called upon to return any verdict as to the guilt or innocence of defendant Mary Bernadette Doyle.

Upon retiring to the jury room, you will select one of your number to act as foreman. The foreman will preside over your deliberations and be your spokesman in court.

Forms of verdict have been prepared for your convenience.

[Forms of verdict read.]

You will take these forms to the jury room and when you have reached unanimous agreement as to your verdict, you will have your foreman fill in, date and sign the form to state the verdict upon which you agree as to each defendant, and then return with your verdict to the court room.

If it becomes necessary during your deliberations to communicate with the Court, you may send a note by the bailiff. But bear in mind you are not to reveal to the Court or any person how the jury stands, numerically or otherwise, on the question of the guilt or innocence of the accused, until after you have reached an unanimous verdict.

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA CENTRAL DIVISION

We, the jury in the above entitled cause, find the defendant, William Schneiderman, ———————— as charged in the indictment.

["Guilty" or "Not Guilty"]

Los Angeles, California.

Foreman of the Jury