**UNITED STATES v. YATES.**

Cr. No. 22467.

United States District Court
S. D. California, C. D.

Sept. 8, 1952.

See also, D.C., 107 F.Supp. 408.

Walter S. Binns, U. S. Atty., Norman Neukom, Asst. U. S. Atty., Ray H. Kinnison, Asst. U. S. Atty., Los Angeles, Cal., Lawrence K. Bailey, Sp. Asst. to the Atty. Gen., for plaintiff.

Ben Margolis, Los Angeles, Cal., for defendant.

MATHES, District Judge.

18 U.S.C. § 401 declares that: "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority * * * as * * * (3) Disobedience * * * to its lawful * * * order * * * or command."

Contempt of court is thus declared to be a public offense*—a crime; and Rule 42(a) of the Federal Rules of Criminal Procedure, 18 U.S.C. provides that: "A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court." See Sacher v. United States, 1952, 343 U.S. 1, 9–11, 72 S.Ct. 451, Id., 2 Cir., 1950, 182 F.2d 416; MacInnis v. United States, 9 Cir., 1951, 191 F.2d 157, certiorari denied, 1952, 342 U.S. 953, 72 S.Ct. 628; Hallinan v. United States, 9 Cir., 1950, 182 F.2d 880, certiorari denied, 1951, 341 U.S. 952, 71 S.Ct. 1010, 95 L.Ed 1375; United States v. Gates, 2 Cir., 1949, 176 F.2d 78.

While on trial under an indictment charging conspiracy, 18 U.S.C. § 371, to violate the Smith Act, 54 Stat. 670, 1940; 18 U.S.C., 1946 ed., § 10; id. 1948 ed., § 2385, defendant Oleta O'Connor Yates chose to take the witness stand in her own defense. Upon cross-examination she declined to answer certain questions, and repeatedly persisted in her refusal after being instructed by the court to answer.

The criminal trial was interrupted and a hearing had. 85 Tr. 11325–11354, 11367–11477. Upon this hearing counsel for the defense conceded that the questions which the defendant as witness blatantly refused to answer were properly put to her, and that "unquestionably this is exclusively within the court's sound discretion." See United States v. Toner, 3 Cir., 1949, 173 F.2d 140, 144; Fed.Rules Crim.Proc. 52(a).

The court thereupon ordered the defendant committed "to the custody of the * * Marshal * * * until such time as she * * * purge herself of the contempts by

* See Appendix.

answering the questions ordered to be answered. * * * "

The criminal trial then proceeded, with the recalcitrant witness Yates continuing to testify and refusing to answer such questions as she chose not to answer. After both prosecution and defense had rested, the court—expressly declining to excuse defendant Yates as a witness in the case—submitted the issues of fact to the jury. The jury returned a verdict of guilty as to defendant Yates and others, a motion for a new trial was presented and denied United States v. Schneiderman, D.C.S.D. Cal.1952, 106 F.Supp. 906, judgment was pronounced, and an appeal from the judgment in the criminal case has been taken and is still pending. The Court of Appeals has ordered defendant Yates released on $20,000 bail pending the appeal in the criminal case. See order in Yates v. United States, No. 13527, 9 Cir., August 29, 1952.

Defendant Yates thereafter moved to be released from custody under the civil contempt charge, basing her motion upon the ground that since the criminal trial is at an end there is no longer any reason why she should be coerced to answer.

This court denied the motion to release the defendant from coercive custody. See United States v. Yates, D.C.S.D.Cal.1952, 107 F.Supp. 408. The defendant appealed and the Court of Appeals has ordered her release on $1,000 bail pending that appeal. See order Yates v. United States, No. 13535, 9 Cir., Sept. 5, 1952.

The United States now presents a motion to punish the witness Yates for criminal contempt by reason of her wilful disobedience to the orders of the court that she answer the unanswered questions.

■ Where a witness is imprisoned for civil contempt, "Imprisonment * * * is not inflicted as a punishment, but is intended to be remedial by coercing the defendant to do what he had refused to do. * * * to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said In re Nevitt [8 Cir.], 117 F. [448] 451, 'He carries the keys of his prison in his own pocket.' He can end the sentence and discharge himself at any moment by

doing what he had previously refused to do." Gompers v. Bucks Stove & Range Co., 1911, 221 U.S. 418, 442, 31 S.Ct. 492, 498, 55 L.Ed. 797.

■■ The power of a court to coerce performance of legal duty is equitable in character. Gompers v. Bucks Stove & Range Co., supra, 221 U.S. at page 441, 451, 31 S.Ct. 492, 55 L.Ed. 797; Bessette v. W. B. Conkey Co., 1904, 194 U.S. 324, 327–329, 24 S.Ct. 665, 48 L.Ed. 997; In re Chiles, 1874, 22 Wall. 157, 168–169, 89 U.S. 157, 168–169, 22 L.Ed. 819. It exists for an equitable purpose, and duration of the power in a given instance is co-extensive with existence of the purpose. United States v. United Mine Workers, 1947, 330 U.S. 258, 295, 67 S.Ct. 677, 91 L.Ed. 884; Gompers v. Bucks Stove & Range Co., supra, 221 U.S. at pages 441–442, 451–452, 31 S.Ct. 492; In re Debs, 1895, 158 U.S. 564, 594–596, 15 S.Ct. 900, 39 L.Ed. 1092; Ex parte Kearney, 1822, 7 Wheat. 38, 45, 20 U.S. 38, 45, 5 L.Ed. 391; United States v. Hudson, 1812, 7 Cranch 32, 34, 11 U.S. 32, 34, 3 L.Ed. 259; Harris v. Texas & Pacific Ry. Co., 7 Cir., 1952, 196 F.2d 88, 90; United States v. International Union, 88 U.S.App.D.C. 341, 190 F.2d 865, 873–874; Parker v. United States, 1 Cir., 1946, 153 F.2d 66, 71, 163 A.L.R. 379; 3 Bl. Comm. *444–445; 4 id. *283–288.

■ This equitable power to imprison a recalcitrant witness in an effort to coerce an answer for the benefit of a litigant is not derived from the quoted provisions of 18 U.S.C. § 401, but is an inherent power possessed from the beginning by federal courts in the exercise of their equity jurisdiction, which parallels that exercised by the English Court of Chancery at the time our Constitution was formed. See Sprague v. Ticonic Bank, 1939, 307 U.S. 161, 164–165, 59 S.Ct. 777, 83 L.Ed. 1184; Atlas Life Ins. Co. v. W. I. Southern, Inc., 1939, 306 U.S. 563, 568, 59 S.Ct. 657, 83 L. Ed. 987; Pennsylvania v. Wheeling Bridge Co., 1851, 13 How. 518, 563–564, 54 U.S. 518, 563–564, 14 L.Ed. 249; Boyle v. Zacharie, 1832, 6 Pet. 648, 658, 31 U.S. 648, 658, 8 L.Ed. 532.

■ While the authorities speak of "civil" contempt and "criminal" contempt

as if they were two entirely separate and distinct matters, the same act of disobedience usually constitutes both. In the last analysis, the distinction between the two depends entirely upon what power of the court is invoked against the contemnor.

■ If coercive or compensatory power of the court is exerted upon the contemnor solely for the benefit of a litigant, such exercise of equity jurisdiction involves the civil power of the court, and hence the proceeding is termed "civil" contempt. Matter of Christensen Eng. Co., 1904, 194 U.S. 458, 24 S.Ct. 729, 48 L.Ed. 1072; Worden v. Searls, 1887, 121 U.S. 14, 24–26, 7 S.Ct. 814, 30 L.Ed. 853.

■ On the other hand, if the punitive or penal power of the court is exerted upon the contemnor, the court's criminal power to punish for the commission of a public offense is necessarily invoked, 18 U.S.C. §§ 401, 402, and such a proceeding is called "criminal" contempt. Gompers v. Bucks Stove & Range Co., supra, 221 U.S. at pages 441–443, 31 S.Ct. 492; In re Debs, supra, 158 U.S. at pages 593–596, 15 S.Ct. 900; Savin, Ex parte, 1889, 131 U.S. 267, 9 S.Ct. 669, 33 L.Ed. 150; Cuddy, Ex parte, 1889, 131 U.S. 280, 9 S.Ct. 703, 33 L.Ed. 154; Ex parte Terry, 1888, 128 U.S. 289, 9 S.Ct. 77, 32 L.Ed. 405; cf. In re Merchants' Stock & Grain Co., Petitioner, 1912, 223 U.S. 639, 32 S.Ct. 339, 56 L.Ed. 584; Doyle v. London Guarantee & Accident Co., 1907, 204 U.S. 599, 27 S.Ct. 313, 51 L. Ed. 641; Alexander v. United States, 1906, 201 U.S. 117, 26 S.Ct. 356, 50 L.Ed. 686; Beale, Contempt of Court, Criminal and Civil, 21 Harv.L.Rev. 11 (1908).

Thus the same act of contempt may result in invoking the equitable power of the court in an effort to coerce compliance, and also in invoking the criminal power of the court to impose a definite sentence of imprisonment by way of punishment. [Penfield Co. v. S. E. C., 1947, 330 U.S. 585, 590, 593–594, 67 S.Ct. 918, 91 L.Ed. 1117].

If, therefore, the equitable power of the court fails of its coercive purpose or cannot for some reason be invoked, cf. United States v. Yates, supra, Yates v. United States supra, such a contingency is "without prejudice to the power and right of the court to punish contempt * * *." Gompers v. Bucks Stove & Range Co., supra, 221 U.S. at pages 451–452, 31 S.Ct. at page 502; Alexander v. United States, supra, 201 U.S. at page 122, 26 S.Ct. 356; Bessette v. W. B. Conkey Co., supra, 194 U.S. at pages 327–334, 24 S.Ct. 665; In re Debs, supra, 158 U.S. at pages 593–594, 15 S.Ct. 900; cf. Michaelson v. United States ex rel., 1924, 266 U.S. 42, 64–67, 45 S.Ct. 18, 69 L.Ed. 162.

And as Mr. Justice Lamar was moved to observe in the Gompers case, supra, 221 U.S. at page 450, 31 S.Ct. at page 501, "if, upon examination of the record, it should appear that the defendants were in fact and in law guilty of the contempt charged, there could be no more important duty than to render such a decree as would serve to vindicate the jurisdiction and authority of courts to enforce orders and to punish acts of disobedience. For while it is sparingly to be used, yet the power of courts to punish for contempts is a necessary and integral part of the independence of the judiciary, and is absolutely essential to the performance of the duties imposed on them by law. * * * If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery."

■ For the reasons stated, the motion to invoke the criminal power of this court to punish the defendant Yates for contempt pursuant to 18 U.S.C. § 401 and Rule 42(a) of the Federal Rules of Criminal Procedure is granted. A certificate of criminal contempt will be filed as provided in Rule 42 (a), and an appropriate term of imprisonment imposed.

### Appendix
### Certificate, Order and Judgment
### of Contempt

In conformity with Rule 42(a) of the Federal Rules of Criminal Procedure I hereby certify that on June 26, 1952 the series of contempts hereinafter set forth, consisting of the refusal of the defendant Oleta O'Connor Yates to answer proper

and relevant questions put to her on cross-examination, were committed in the actual presence of the court and were seen and heard by the court during the trial of the case entitled U. S. v. Schneiderman, D.C., 106 F.Supp. 906.

## Specification No. 1

"Q. At any time since you have been a member of the Communist Party have you ever known Mr. Harry Glickson to be a member of the Communist Party?

"Mr. Margolis: Objected to on the ground it is incompetent, irrelevant and immaterial, not proper cross-examination, merely an attempt to get this witness to name names and not really to obtain any evidence as far as the Government is concerned.

"The Court: Overruled.

"The Witness: Well, that is a question which, if I were to answer, could only lead to a situation in which a person could be caused to suffer the loss of his job, his income, and perhaps be subjected to further harassment, and in a period of this character, where there is so much witch-hunting, so much hysteria, so much anti-communism, I am sorry I cannot bring myself to contribute to that.

"Mr. Neukom: May I have the question again put to the witness, your Honor?

"The Court: Do you understand the question?

"The Witness: Yes, I do, your Honor.

"The Court: You are instructed by the court to answer the question.

"The Witness: Well, my answer is the same.

"The Court: Do you decline to answer the question?

"The Witness: I do, your Honor.

## Specification No. 2

"Q. By Mr. Neukom: Mrs. Yates, is it not true that Mr. Harry Glickson was during the years 1945 and 1946 an active chairman of a communist club in the city of San Francisco? A. I have given the answer.

"Mr. Margolis: Before that question, your Honor, I would like the record to show the same objection to this line of questioning.

"The Court: The record may so show. The objection is overruled. Answer the question.

"The Witness: I cannot answer that for the same reasons I stated with respect to the previous question.

"The Court: Do you refuse to answer?

"The Witness: I do, your Honor.

## Specification No. 3

"Q. By Mr. Neukom: It is not true that according to your own knowledge and during the period that you were an organizational secretary, that is, after you were first elected organizational secretary of the Communist Party, that you knew that one Harry Glickson was then in the year 1950 an active member of the Communist Party?

"Mr. Branton: Your Honor, before the witness answers the question, may I respectfully request that the court give us an opportunity at this time on the matter which we believe we have some position to state, rather than have the matter go any further. I believe we should give the court the benefit of what we have to say on this subject in the absence of the jury, and we respectfully ask that the court give us the opportunity at this time.

"The Court: I will hear you at recess, Mr. Branton.

"Mr. Margolis: If your Honor please, I want to object to that question on all the grounds previously stated and on the additional ground it is a restatement of the same question—and I think it is simply to get an additional count of contempt of court.

"Mr. Wirin: And the additional objection the question is compound.

"The Court: The last may be true. Please read the question, Mr. Reporter.

(Question read.)

"Mr. Neukom: It covers one period, your Honor.

"The Court: Overruled. Answer the question.

"The Witness: However many times I am asked and in however many forms, to identify a person as a communist, I can't bring myself to do it, because I know it means loss of job; I know that it means persecution for them and their families; I know that it even opens them up to possible illegal violence, and I will not be responsible for that. I will not do it.

"The Court: By all of that do you mean you decline to answer the pending question?

"The Witness: I mean that I decline to answer for those reasons.

"The Court: Does that mean you refuse to answer the pending question?

"The Witness: Yes, I guess it does, your Honor.

### Specification No. 4

"Q. Is it not true that there was elected as a delegate from California to the convention to be held in New York, the national convention, one Frank Spector, the defendant here? A. Well, we are right back where we were a little while ago. I have stated —

"Mr. Wirin: Just a minute, Mrs. Yates. That is objected to on the ground it is incompetent, irrelevant and immaterial, not subject of direct examination and therefore beyond the scope of cross examination. I call your Honor's attention to the fact that the defendant Spector has rested in this case.

"The Court: Overruled. You may answer.

"The Witness: As I stated this morning, I would again be putting myself in the role of a government informer if I were to start discussing any of the questions that pertain to defendants who have rested their case, and do not propose to put on any further defense, and for that reason I refuse to answer.

"The Court: You refuse to answer the question?

"The Witness: I do, your Honor, for those reasons.

"The Court: The court instructs you to answer the question. Do you still refuse?

"The Witness: I still do."

And the defendant, Oleta O'Connor Yates, having refused to answer the above questions after having been ordered so to do by the court, the court now finds and certifies that said Oleta O'Connor Yates is in criminal contempt of this court, in that she did wilfully disobey and resist lawful orders of the court, to wit, the orders hereinabove set forth, to answer the questions appearing under the above numbered specifications 1, 2, 3 and 4.

Now, on this 8th day of September, 1952 the defendant Oleta O'Connor Yates having appeared and being before the court in person and with her counsel Ben Margolis, Esquire, and the attorney for the Government also being present,

It Is Adjudged that the defendant has been convicted of four separate contempts, 18 U.S.C. § 401, committed in the presence of the court, Fed.Rules Crim.Proc. 42(a), by wilful refusal to answer four questions in wilful disobedience of the order of the court so to do, as hereinabove shown; and the court having asked the defendant whether she has anything to say why judgment should not be pronounced, and no sufficient cause to the contrary being shown or appearing to the court,

It Is Adjudged that the defendant is guilty of four separate contempts as hereinabove charged and convicted.

It Is Further Adjudged that the defendant is hereby committed to the custody of the Attorney General or his authorized representative for a period of 3 years for each of the four separate contempts of which the defendant stands convicted herein, for refusal to answer the four questions concerning Harry Glickson and Frank Spector as hereinabove certified.

It Is Further Adjudged that the four separate terms of imprisonment herein imposed for the four separate contempts of which the defendant stands convicted herein shall commence and run concurrently.

It Is Ordered that the Clerk deliver a certified copy of this judgment and commitment to the United States Marshal or other qualified officer and that the copy serve as the commitment of the defendant.

It Is Further Ordered that the entire record—including the reporter's transcript of testimony, argument and other proceedings—in (1) criminal case No. 22131 pending in this court, and (2) in civil contempt proceeding, D.C., 107 F.Supp. 408, and (3) in criminal contempt proceeding No. 22379 pending in this court, be and are hereby incorporated by reference herein.