**UNITED STATES of America, Plaintiff,**

**v.**

**Oleta O'Connor YATES, Defendant.**

**Crim. No. 22379.**

United States District Court
S. D. California,
Central Division.

Jan. 28, 1958.

Laughlin E. Waters, U. S. Atty., and Norman Neukom, Asst. U. S. Atty., Los Angeles, Cal., for plaintiff.

Margolis, McTernan & Branton, Los Angeles, Cal., for defendant.

MATHES, District Judge.

It is now almost six years since the defendant at the bar, Oleta O'Connor Yates, and thirteen other paid, fulltime functionaries of the Communist Party were on trial in this court under an indictment charging them with conspiracy to commit offenses against the United States [18 U.S.C. § 371] prohibited by the Smith Act [54 Stat. 670 (1940), 18 U.S.C. § 10 (1946), § 2385 (1952)] "by wilfully * * * advocating and teaching the duty and necessity of overthrowing the Government of the United States by force and violence * * * and by (2) wilfully * * * helping to organize as the Communist Party of the United States of America * * * a group * * * of persons who teach and advocate the overthrow * * * of the Government of the United States by force and violence, with the intent of causing the * * * overthrow * * * of the Government * * * by force and violence as speedily as circumstances would permit." See: United States v. Schneiderman, D.C., 102 F.Supp. 52, Id., D.C.S.D.Cal.1951, 102 F.Supp. 87; United States v. Spector, D.C.S.D.Cal.1951, 102 F.Supp. 75; United States v. Schneiderman, D.C., 104 F.Supp. 405, Id., D.C., 106 F.Supp. 731, Id., D.C., 106 F.Supp.

892, Id., D.C., 106 F.Supp. 906, Id., D.C. S.D.Cal.1952, 106 F.Supp. 941; United States v. Yates, D.C., 107 F.Supp. 408, Id., D.C.S.D.Cal.1952, 107 F.Supp. 412.

The judgment of conviction entered upon the verdict of the jury was affirmed by the Court of Appeals [Yates v. United States, 9 Cir., 1955, 225 F.2d 146, and later reversed by the Supreme Court, 1957, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed. 2d 1356]. On December 2, 1957, upon the Government's motion, the indictment was dismissed on the ground that the prosecution "cannot satisfy the evidentiary requirements laid down by the Supreme Court in its opinion reversing the convictions * * *."

Toward the close of the long trial which began in February and ended in August of 1952, after the Government had rested its case, defendant Yates alone of the fourteen defendants chose to take the witness stand. On direct examination she told what she wanted to tell day after day for many days. She was an extremely articulate witness and her appearance was a cleverly-staged stratagem, affording her the opportunity in effect to argue the defendants' case to the jury while purporting to give evidence on the issue of her state of mind or intent.

When at length the time came for Government counsel to cross-examine, it soon developed that defendant Yates came prepared and determined to testify only to such matters as she saw fit. She repeatedly declined to answer questions, and in defiance of the authority of the court persisted in her refusal after being instructed by the court to answer. All of this took place in the presence of the jury and in a courtroom crowded with spectators.

The criminal trial was interrupted and a hearing had. Upon this hearing counsel for the defense conceded that the questions which defendant Yates as witness had blatantly refused to answer were properly put to her, and that her conviction and punishment for contempt of court were matters "unquestionably * * * exclusively within the Court's sound discretion." See United States v. Toner, 3 Cir., 1949, 173 F.2d 140, 144.

The only excuse offered for this repeated defiance of the court was the sporting proposition that one does not wish to be an informer against anyone.

On the occasion in question here (there were others—see United States v. Yates, supra, 107 F.Supp. 408, Id., 107 F.Supp. 412, reversed 9 Cir., 1955, 227 F.2d 844, Id., 227 F.2d 848), defendant Yates was held in criminal contempt for refusal to answer eleven separate questions, and sentenced to imprisonment for one year on each of the eleven specifications of criminal contempt, all sentences to commence and run concurrently. The Court of Appeals affirmed. Yates v. United States, 9 Cir., 1955, 227 F.2d 851.

Upon certiorari [1956, 350 U.S. 947, 76 S.Ct. 322, 100 L.Ed. 825], the Supreme Court held that the eleven defiances constituted but a single contempt, and reversed the conviction as to specifications II to XI, affirmed the conviction as to specification I, but vacated the sentence and remanded the case to this court for resentencing on specification I. Yates v. United States, 1957, 355 U.S. 66, 78 S.Ct. 128, 2 L.Ed.2d 95; cf: Hirabayashi v. United States, 1943, 320 U.S. 81, 85, 63 S.Ct. 1375, 87 L.Ed. 1774; Sinclair v. United States, 1929, 279 U.S. 263, 299, 49 S.Ct. 268, 73 L.Ed. 692.

The mandate of the Supreme Court, filed in this court on January 15, 1958, reads in part:

"This Cause came on to be heard on the transcript of the record from the United States Court of Appeals for the Ninth Circuit, and was argued by counsel.

"On Consideration Whereof, It is ordered and adjudged by this Court as follows: The contempt convictions on specifications II–XI, inclusive, in this cause, be, and they are hereby, reversed. The contempt conviction on specification I, be, and it is hereby, affirmed, but the sentence on that conviction is vacated.

"It is further ordered that this cause be, and the same is hereby, remanded to the United States District Court for the Southern District of California for resentencing in the light of the opinion of this Court."

I am admonished by the Supreme Court in its opinion that this court should now consider "the extent of the willful and deliberate defiance of the court's order [and] the seriousness of the consequences of the contumacious behavior * * *." Yates v. United States, supra, 355 U.S. at page 75, 78 S.Ct. at page 134; United States v. United Mine Workers, 1947, 330 U.S. 258, 303, 67 S.Ct. 677, 91 L.Ed. 884.

As I understand that admonition, the extent of the defiance and the seriousness of the consequences are to be considered in the setting that existed at the time—remembering not alone the words spoken as recorded in the stenographic transcript, but also everything that occurred in the presence of this court in connection with the matter.

The record of the more-than-six-months' trial of defendant Yates and her thirteen co-defendants "consists of some 14,000 typewritten pages." Yates v. United States, supra, 354 U.S. at page 327, n. 34, 77 S.Ct. at page 1081. Reading at the rate of one page per minute throughout each hour of each eight-hour day, without rest or interruption, thirty consecutive days and more would be required in order merely to read that record of the words spoken—what was heard at the trial.

But what was heard at the trial tells only part of the story, and unfortunately my command of the English language is not such as to enable me to tell the rest—to describe adequately all that was seen or otherwise perceived by the senses as the words were spoken, and before and after.

From her own lips I learned that defendant Yates is a native-born American citizen and a graduate of the University of California; that she has been for many years an ardent and zealous Communist; that while in college she became a Socialist, but became convinced that the Socialist movement would not, because of its peaceful methods, be successful in this country; that she thereupon cast her lot with the Communist Party and embraced Lenin's teachings that only through forcible overthrow of the capitalist governments in power can socialism be established.

The Supreme Court observed that the defendant's "reluctance to be an informer" is "understandable" and a "factor" to be considered. But it must be remembered too that to be compelled to be an informer is distasteful to all freemen. Yet, if the trial courts of our land did not have and exercise the power to compel witnesses to become informers, our system of justice would in time collapse, and with it all of our courts.

Indeed, in criminal matters, with respect to all public offenses, the policy of the law is to encourage the citizen to become an informer. See: Roviaro v. United States, 1957, 353 U.S. 53, 59, 77 S.Ct. 623, 1 L.Ed.2d 639; In re Quarles, 1895, 158 U.S. 532, 535–536, 15 S.Ct. 959, 39 L.Ed. 1080; Vogel v. Gruaz, 1884, 110 U.S. 311, 316, 4 S.Ct. 12, 28 L.Ed. 158. And one of the provisions of our Bill of Rights guarantees to every person accused of crime the right "to have compulsory process for obtaining witnesses in his favor" [U.S.Const. Amend. VI], which, to be meaningful at all, necessarily presupposes the power of the court to compel those witnesses to testify—to become informers.

Another factor to be taken into account in "reconsidering the sentence" imposed upon defendant Yates, states the Supreme Court's opinion, is "her apparently courteous demeanor." 355 U.S. at page 75, 78 S.Ct. at page 134. In the words spoken, yes, defendant Yates was courteous; but in attitude she was the most coldly defiant and wholly contemptuous witness I have ever seen in more than thirty years at the bar and on the bench.

Perhaps defendant Yates achieved this questionable distinction because she was

not the ordinary witness who, when surprised by a question he feels morally obligated not to answer, defies the authority of the court. She knew when she elected to take the stand that she would almost certainly be called upon to defy the authority of the court. Her contempt then was planned, deliberate, and cynical.

Moreover, her contempt was real. She in fact evinced sincere and utter contempt—not alone for the authority of the court, but also for the American system of government and justice—as she sat on the witness stand and, in the presence of the jury and the bar and a courtroom crowded with spectators, repeatedly and defiantly refused to bow to the authority of the court.

Like one speaking words of apology while thumbing his nose at the person addressed, defendant Yates showed her contempt by action and demeanor rather than words. The cold printed record of the "courteous" words spoken unhappily cannot reveal to the reader the insincere mockery of impeccable manners, the condescending attitude of contemptuous superiority revealed in the inflection of voice, the expressions of the face and the hands, the shrug of the shoulders.

Nor can the cold printed record reproduce the scene, the setting in which the action took place: the all-but-audible "cheering" and "booing" of the "rooting section" in the audience; the supercilious half-smirk, half-smile visages of the thirteen co-defendants who inaudibly applauded every defiance.

I only regret my inability to describe adequately the corrupting influence upon the entire trial scene of the defendant's conduct in repeatedly displaying for all present the consummate in disrespect and contempt for the authority of the trial court.

It is the great good fortune of trial judges that our system of justice provides appellate courts to review their work and correct their demonstrable errors; it is an unavoidable misfortune that appellate judges must rest their labors upon the cold printed record of words spoken which all too frequently do not adequately tell what actually took place in the trial court.

As so well put by appellate judges themselves in Broadcast Music, Inc., v. Havana Madrid Restaurant Corp., 2d Cir., 1949, 175 F.2d 77, "the demeanor of an orally-testifying witness is 'always assumed to be in evidence.' It is 'wordless language.' The liar's story may seem uncontradicted to one who merely reads it, yet it may be 'contradicted' in the trial court by his manner, his intonations, his grimaces, his gestures, and the like—all matters which 'cold print does not preserve' and which constitute 'lost evidence' so far as an upper court is concerned. For such a court, it has been said, even if it were called a 'rehearing court,' is not a 'reseeing court.' * * * A 'stenographic transcript correct in every detail fails to reproduce tones of voice and hesitations of speech that often make a sentence mean the reverse of what the words signify. The best and most accurate record is like a dehydrated peach; it has neither the substance nor the flavor of the fruit before it was dried.' It resembles a pressed flower. The witness' demeanor, not apparent in the record, may alone have 'impeached' him." 175 F.2d at page 80.

18 U.S.C. § 401 declares that: "A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority * * * as * * * (3) Disobedience * * * to its lawful * * * order * * * or command."

█ It is settled that a sentence within the limits permitted by law rests within the discretion of the trial court. This is so because the appellate courts recognize that the printed record does not reveal all the relevant considerations guiding judgment in such matters. As the Supreme Court has said, "there may have been other facts and circumstances before the trial court properly influencing the extent of the punishment." Blockburger v. United States, 1932, 284 U.S. 299, 305, 52 S.Ct. 180, 182, 76 L.Ed.

306; and see Kawakita v. United States, 1952, 343 U.S. 717, 745, 72 S.Ct. 950, 96 L.Ed. 1249.

One of the most renowned of legal philosophers teaches that the judgment of the court should be determined by "a judicial process carried on by applying a reasoned technique to experience developed by reason and reason tested by experience." [Pound, Justice According to Law, 91 (1951).]

We read much today about disparity between sentences of different judges for the same offense. It is an age-old problem, complicated by the oft-forgotten fact that the defendants are different individuals and the circumstances surrounding the "same offense" differ widely. [See: Yankwich, Individualization of Punishment in the Federal Courts, 20 F.R.D. 385 (1957); Sheldon Glueck, The Sentencing Problem, 20 Federal Probation 19 (1956).]

With all due deference to those who may differ, I think that one year of imprisonment is little enough punishment for the privilege of putting on the performance defendant Yates did. A witness in a case involving grave criminal charges ought not to be able to purchase, with a mere fine or short jail term, a license to "pick and choose" the questions he deigns to answer, the evidence he wishes to give. The administration of criminal justice in this country cannot afford such cheap immunity.

Moreover, the defendant Yates might well reflect that for like conduct in Communist Russia, which she would have this country emulate, she would have been given (in 1952, not 1958) perhaps a lifetime to think things over in the mines or the forests of Siberia—or perhaps only until the crack of a rifle in the dawn of the day after.

I have reconsidered the sentence in the light of the Supreme Court's opinion, as the mandate of the Court has directed. In the interest of justice and to vindicate the authority of the court in this case, I sentence the defendant to imprisonment for the period of one year for the offense of criminal contempt set forth in Specification I, her conviction of which has been affirmed by both the Court of Appeals and the Supreme Court.